William Earl **BAYSDEN**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 7928.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1959.

Decided Oct. 21, 1959.

George Rountree, Jr., Wilmington, N. C. (George T. Clark, Jr., Wilmington, N. C., on brief), for appellant.

Julian T. Gaskill, U. S. Atty., Goldsboro, N. C. (Lawrence Harris, Wake Forest, N. C., and Jane A. Parker, Asst. U. S. Attys., Raleigh, N. C., on brief), for appellee.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

SOPER, Circuit Judge.

The crucial inquiry in this case is directed to the validity of a federal search warrant under which evidence was secured that led to the conviction and sentence of the appellant to imprisonment for twelve and a half years and a fine of $10,000 for the crime of counterfeiting United States currency in violation of 18 U.S.C. § 471 of the United States Criminal Code.

William Earl Baysden and another[1] were the defendants in the District Court. Baysden operated a furniture store in Jacksonville, North Carolina. During the summer months of 1958 United States Secret Service Agents became aware that counterfeit notes were being circulated in the community of Jacksonville and were investigating the matter. On the morning of September 19, 1958, P. E. Thigpen, a civil service employee of the Federal Government at Camp Lejeune, North Carolina, told Talmadge W. Bailey, one of the Secret Service Agents engaged in the investigation, of an experience he had had the previous day at the defendant's store. He said that a salesman was showing him refrigerators and deep freezers and that the salesman had difficulty in opening one of the freezers but, finally, when the door came open he saw a box inside which, when opened by the salesman, disclosed a quantity of what appeared to be $20.00 bills and that the salesman said that it was "play money" and put the box back into the freezer and closed the door.

Being possessed of this information, which he credited, and knowing that counterfeit money was being circulated in the city, Bailey and Vernon D. Spicer, another Secret Service Agent, went before the United States Commissioner the same day and secured a search warrant authorizing them to search the store and to seize the counterfeit currency if it were found.

The affidavits on which the search warrant was based contained the sworn statements of the agents to the effect that they had reason to believe that counterfeit United States currency was being concealed in Baysden's furniture store with intent for use in violation of the statute and that counterfeit currency had been placed in circulation in the area, and that the affiants were informed and believed that a quantity of counterfeit currency was then being stored in a freezer in the store. The search warrant itself set out the substance of the allegations contained in the affidavit as well as the statement of the Commissioner that he was satisfied that there was probable cause to believe that the property described was being concealed in the store and therefore grounds for the issuance of the warrant existed.

Armed with the search warrant, the two agents went to the store. Agent Spicer first entered alone to observe the situation inside. He pretended to be interested in the purchase of a refrigerator

[1]. No appeal was taken by the co-defendant, who was placed upon probation.

and was taken to the wall against which the refrigerators were placed. He noticed one with a "Sold" tag on it and with some difficulty was able to open it. Inside he saw some boxes but did not open them. He then went outside and joined Agent Bailey and other State and Government officers who had assembled to make the search. They entered the store, read the warrant to the defendant, and searched the place. They came to the freezer which Agent Spicer had opened a short time before and opening it with some difficulty found twenty boxes which contained $776,680.00 in counterfeit $20 bills. The defendant was then arrested and indicted.

At the subsequent trial of the case a motion was made to suppress the evidence obtained in the search on the ground that the search warrant was invalid, since the agents had no personal knowledge of the presence of the bogus money in the defendant's store when they applied for the search warrant, but based their affidavits as to this fact solely on the information obtained from Thigpen, and did not disclose to the Commissioner the source of their information or the name of their informant. The judge overruled the motion on the ground that the information furnished by Thigpen to the agents, together with their personal knowledge of counterfeit money in the community, constituted sufficient basis for the issuance of the warrant and the search of the store. The correctness of this ruling is the subject matter of the appeal.

On consideration of the matter, we are constrained to hold, notwithstanding the strong evidence in support of the defendant's guilt, that the motion to supress the evidence secured by the search should have been granted. We do not doubt, as the District Judge found, that the federal agents had ample grounds for their belief that the defendant was in possession of illicit money in his store; nor do we doubt that any official clothed with authority to issue a warrant to search the defendant's place of business would have been justified in issuing such a warrant if the agents had disclosed not only the information they possessed but, also, the source from which it had been obtained. Unfortunately this requirement was not met and in its absence we have no alternative but to reverse the judgment of conviction and remand the case for further proceedings.

■ It has been laid down again and again that the prohibition of the Fourth Amendment against unreasonable searches and seizures must be rigidly enforced and that the procedure for the issuance of a search warrant which gives effect to the amendment must be scrupulously observed. It is provided by Rule 41(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., that a search warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant, and that if the judge or commissioner is satisfied that grounds for the application exist, or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and the person or place to be searched. It is also provided that the warrant shall state the grounds or probable cause for its issuance and the names of the persons whose affidavits had been taken in support thereof.

■ The decisions of the courts in passing upon the Fourth Amendment and Rule 41 hold that a federal civil officer charged with the responsibility and duty to detect crime may not undertake the search of a house or place of business upon his own authority, no matter how strong or reasonable the probability may be that the citizen is guilty of crime. The power to authorize a search is lodged in a judicial officer and the grounds for the issuance of the warrant must be submitted to his impartial judgment so that he may determine whether probable cause exists for the invasion of the property of the accused. Thus, it was said in Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436:

"The point of the Fourth Amendment, which often is not grasped by

zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

See also Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed. 2d 1503.

In the enforcement of this safeguard against unlawful searches and seizures, it is generally held that a search warrant should not issue upon the affidavit of a government officer which merely shows that he is in possession of information which gives him cause to believe that the accused is in possession of property in violation of the criminal law on the premises described in the warrant without revealing the sources of his information or the grounds of his belief. See Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; Sutherland v. United States, 4 Cir., 92 F.2d 305. If the magistrate may accept the belief of the officer as sufficient, without inquiry as to its basis, controlling significance is attached to the officer's belief rather than to the magistrate's judicial determination. And it is of no avail that, in the execution of an invalid warrant, evidence of the commission of the crime was secured. In Byars v. United States, supra, it was said:

"Nor is it material that the search was successful in revealing evidence of a violation of a federal statute. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of the unlawful search where a timely challenge has been interposed."

The decisions upon which the Government chiefly relies in the pending case, to wit: Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, and Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, establish the right of government officers to arrest persons without a warrant of arrest or to search without a search warrant vehicles capable of swift movement when the officer had probable cause to believe that a crime has been committed and it is impracticable to obtain a warrant before taking action. They recognize that the standard of probable cause sufficient to justify an arrest or a search is set by practical considerations and gives leeway for the enforcement of the law for the protection of the community without abandoning the safeguards which protect persons from arrest or search based on mere conjecture or suspicion. These cases have no application to the facts of the pending case, where a

search warrant was available and readily procured but was issued without observing the legal requirements.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.