(No. 36186.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. WARDELL JACKSON, Plaintiff in Error.

*Opinion filed May 19, 1961.—Rehearing denied September 20, 1961.*

384

GETER & GETER, of Chicago, and DOBIN, HAYES & MOORE, of Champaign, (HOWARD D. GETER, SR., ROBERT P. MOORE, and HOWARD D. GETER, JR., of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and ROBERT W. MCDONALD, State's Attorney, of Urbana, (FRED G. LEACH, Assistant Attorney General, and ROBERT J. WAALER, and ANDREW STECYK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After being granted a change of venue from the county court of Champaign County, the defendant, Wardell Jackson, was tried by a jury in the criminal court of Cook County and was found guilty of unlawfully possessing certain policy paraphernalia, and of maintaining a place for policy playing. Judgment was entered on the verdict and defendant was sentenced to the county jail for a period of ten months and fined the sum of one thousand dollars. He prosecutes this writ of error for review contending principally that the trial court erred in denying his motion to suppress evidence seized under authority of a search warrant which he contends was void, first, because the complaint therefor was based on hearsay and the conclusions of complainant and, second, because the warrant did not comply with section 2 of division VIII of the Criminal Code. (Ill. Rev. Stat. 1959, chap. 38, par. 692.) Although the crime was a misdemeanor for which a writ of error should normally be prosecuted to the Appellate Court, defendant's contention that the circumstances of the warrant were such as to make the search and seizure an unreasonable one involves a constitutional question within the concepts announced in *People* v. *Watkins,* 19 Ill.2d 11, and *People* v. *Mayo,* 19 Ill.2d 136.

Pertinent facts show that Richard Davenport, a Champaign County deputy sheriff, possessing "prior information" given to him by an undisclosed person, kept the residence of defendant under surveillance for a period of two weeks prior to January 18, 1960. Two or three nights of each week he saw a woman, Marie Thomas, enter defendant's home. On each occasion she remained inside from five to fifteen minutes, then drove away with a man in a waiting car. On January 18, 1960, Davenport signed a complaint for a search warrant which alleged his belief there was policy paraphernalia in the premises and set forth "that as grounds for his belief he says said premises have been under

surveillance and persons known by me to be employed in such activities of policy game or lottery have been seen by me entering said premises."

As a result of the complaint, two justices of the peace signed and issued a search warrant directing a search for lottery-policy equipment at the address of defendant's home. County and city law officers proceeded to execute the warrant the same night and, upon entering defendant's residence, found in the kitchen the defendant, Marie Thomas, and Amanda St. Charles, a 69-year-old resident of the same address. After the search warrant was read to defendant the officers searched the premises and found policy paraphernalia wrapped in a table cloth laying on a kitchen cabinet, in the upper rooms, in the garage, and in the pockets of clothing hanging in a hall. According to one deputy, defendant admitted the clothing was his.

It also appears that on January 8, 1960, an information charging defendant with a violation of the Illinois Liquor Control Act was filed in the county court of Champaign County and a criminal *capias* was issued by the clerk of that court. The officers also had this *capias* in their possession when they entered defendant's home on January 18, 1960, and it was also read to defendant along with the search warrant. Although the People contend that the search of the premises may also be justified as an incident to the valid arrest under the *capias,* in the view we take of the record this question need not be considered.

When brought to trial under an information charging him with violating the lottery-policy laws, defendant made a motion to quash the search warrant and to suppress the evidence seized under its authority alleging various defects in the complaint and the warrant. At the hearing on the motion the testimony related only to defendant's arrest for the liquor violation and we gather he was pursuing some theory that the *capias* issued for that offense was in some manner misused to conduct the search for policy parapher-

nalia. The trial court, however, found that the *capias* arrest was only incidental to the execution of the search warrant and denied the motion.

Deputy Davenport was not called by defendant to testify at the hearing on the motion to quash and suppress, but was a witness for the prosecution at the ensuing trial of the cause. Basing his attack entirely upon Davenport's testimony on the latter occasion, defendant contends for the first time in this court that the search warrant was improperly issued because the complaint was based on hearsay and conclusions, rather than facts within the personal knowledge of the complainant. No claim is made here that the ultimate facts stated did not show probable cause, (and we agree with the People that any contention to the contrary has been waived,) but only that probable cause was established in an improper manner. Even if it were to be assumed this issue was raised below, ruled upon and properly preserved for review, the contention would still be of no avail to defendant. The simple truth is that the complaint does not purport to be based on hearsay or conclusions, but upon facts within the complainant's own knowledge, learned while the defendant's residence was under surveillance.

Moreover, even if the complaint had been in part based on hearsay, such a circumstance would not necessarily be fatal. In the recent case of *Jones* v. *United States,* 362 U.S. 257, 267-271, 4 L. ed. 2d 697, 706-708 (March 1960), it was held that hearsay may be used to establish probable cause for a warrant, so long as there is a substantial basis for crediting the hearsay. We have indicated before that we will follow the decisions of the United States Supreme Court on identical State and Federal constitutional problems. *People* v. *Castree,* 311 Ill. 392; *People* v. *Tillman,* 1 Ill.2d 525.

Defendant next contends the search warrant was void because it did not comply with section 2 of division VIII of the Criminal Code. (Ill. Rev. Stat. 1959, chap. 38, par.

692.) Subparagraph 3 of section 2 authorizes the issuance of a search warrant: "To search for and seize lottery tickets, or materials for a lottery, unlawfully made, provided or procured, for the purpose of drawing a lottery." The warrant in the instant case authorized a search for: "* * * certain lottery tickets, policy tickets, writings, slips, papers or documents representing or being a record of a chance, sale or interest in numbers sold, drawn or to be drawn, in the nature of the bet, wager or insurance upon the drawing or drawn numbers of a policy or private lottery, and apparatus, equipment and devices used therefore."

Drawing upon general language in past decisions to the effect that a search warrant must contain every statutory requirement, (*Earl* v. *People,* 117 Ill. App. 608), and that a justice of the peace has no right to issue a warrant that enlarges upon the statute, (*White* v. *Wagar,* 185 Ill. 195,) defendant argues the warrant was void because the statute authorizes a search neither for "policy" tickets, nor for lottery tickets or chances "already drawn." There is no merit to either proposition. The term "lottery" has no technical meaning in law distinct from its popular signification, (*Dunn* v. *People,* 40 Ill. 465, 467,) and we know from common knowledge, from statutory definition (Ill. Rev. Stat. 1959, chap. 38, par. 412,) and from testimony in the present record that policy is but a specialized form of lottery and that both are devices by which one may secure a prize by chance. Thus, while subparagraph 3 of section 2 of division VIII of the Criminal Code makes no specific mention of "policy," the language used in the search warrant was permitted by the broad definition of "lottery" as that term is commonly understood. In like manner, the statutory language does not permit the distinction which defendant seeks to make between tickets for lotteries not yet drawn and tickets for lotteries already drawn. The statute permits a warrant to "search for and seize lottery tickets," and a

ticket drawn or undrawn falls within the plain and ordinary meaning of such language.

As a further ground for attack on the warrant, defendant asserts that it failed to comply with subparagraph 4 of section 2 of division VIII of the Criminal Code, (Ill. Rev. Stat. 1959, chap. 38, par. 692,) by omitting to charge that the place to be searched was used for the purpose of unlawful gaming. (Cf. *Early* v. *People,* 117 Ill. App. 608.) The warrant here, however, was issued under authority of subparagraph 3, the language of which, (*viz.,* "materials for a lottery",) is sufficiently broad to authorize the search for "apparatus, equipment and devices" used for a lottery.

We conclude that the complaint and warrant were not subject to the infirmities charged by defendant and that the search of his premises was therefore a reasonable one falling outside the constitutional prohibitions against unreasonable searches. Accordingly, the trial court did not err in denying the motion to quash and suppress.

Defendant was charged and found guilty under an eight-count information, seven of which charged the unlawful possession of policy paraphernalia, and the eighth charging that he kept his residence as a place for policy playing. For his next contention, he urges that the verdict of the jury was not supported by the evidence in that the prosecution failed to show he was in possession of the policy paraphernalia, and that there was a complete absence of proof that his residence was used for policy playing.

The last contention may be quickly disposed of, for the People concede the failure of the proof to show that the residence was kept and used as a place for policy playing. However, such failure does not necessarily require a reversal. The other counts of the information charged distinct crimes of possession arising out of the same transaction; the jury returned a general verdict of guilty to the charges in the indictment; and the sentence imposed was within the

statutory limits for the crime of possession. (See: Ill. Rev. Stat. 1959, chap. 38, par. 413; cf. *People* v. *Hightower,* 20 Ill.2d 361.) In such a situation any good count sustained by the proof will support a general verdict, although there are other counts which are unsupported. *People* v. *Gillespie,* 344 Ill. 290.

As to the contention that possession of the policy paraphernalia was not proved, defendant's brief argument, made without citation of authority, appears to be there was no possession because none of the paraphernalia was taken from his person. It is clear, however, that actual or physical possession is not required and that possession may be constructive as well as actual. (See: *People* v. *Green,* 362 Ill. 171; *People* v. *McGowan,* 415 Ill. 375; cf. *People* v. *Mack,* 12 Ill.2d 151; *People* v. *Matthews,* 18 Ill.2d 164.) Here there is uncontradicted proof of constructive possession inasmuch as policy paraphernalia was found in defendant's living quarters and in clothing he admitted to an officer was his.

One witness for the prosecution was Cleveland Brown who testified as to the manner in which the policy game operated and identified certain of the People's exhibits as policy paraphernalia. Further, over defendant's general objection, the witness was permitted to testify that he had worked for defendant in the policy business during the years, 1956, 1957 and 1958. Defendant, again without citation of authority, contends the portion of the witness' testimony last-described was prejudicial and inflammatory and thus improperly admitted. While we are familiar with the rule that evidence proving or suggesting the commission of another crime is generally inadmissible if relevant only for the purpose of showing a disposition to commit crime and inviting an inference of guilt for that reason (*Farris* v. *People,* 129 Ill. 521; *Crane* v. *People,* 168 Ill. 395), at the same time evidence of other offenses may be admissible to show guilty knowledge (*DuBois* v. *People,* 200 Ill. 157),

specific intent (*People* v. *Hobbs,* 297 Ill. 399), motive (*People* v. *Laures,* 289 Ill. 490), and design or plan (*People* v. *Rooney,* 355 Ill. 613). Under the statute which prohibits the possession of policy, it is essential that the items be possessed "knowingly," a term that implies a person must be aware of the fact of possession and also have knowledge of the nature of what is possessed. Brown's testimony, while perhaps prejudicial to some extent, was relevant and proper to show defendant knew the items he possessed were in fact policy paraphernalia. In a criminal case, where evidence is relevant and otherwise admissible it is not to be excluded because it may also have a tendency to prejudice the accused. *People* v. *DeFrates,* 395 Ill. 439.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*