STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. NICHOLAS MACRI AND JERRY RACANIELLO, DEFEND-ANTS-RESPONDENTS.

———

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MICHAEL A. VISCITO, DEFENDANT-RESPONDENT.

Argued December 18, 1962—Decided February 18, 1963.

Mr. *Brendan T. Byrne,* Essex County Prosecutor, argued the causes for the appellant (*Mr. Peter Murray,* Assistant Prosecutor, of counsel).

Mr. *Max Mehler,* attorney for respondent Nicholas Macri, argued the causes for the respondents (*Mr. Saul C. Schutzman,* attorney for respondents Jerry Racaniello and Michael A. Viscito).

The opinion of the court was delivered by

JACOBS, J. In *State v. Macri,* 72 *N. J. Super.* 511 (*Law Div.* 1962), Judge Crane ordered the quashing of the search warrant and the suppression of evidence which, on his finding, was obtained by the Essex County Prosecutor's office through an unconstitutional search and seizure. In *State v. Viscito* he entered a similar order on a similar finding. Leave to appeal from the orders was denied by the Appellate Division but thereafter this Court granted certification on the State's application. 38 *N. J.* 184 (1962). The order granting certification directed that testimony be taken with respect to the facts in the State's possession and the facts disclosed to the issuing judge at the time the search warrants were obtained.

In *Macri* a search warrant was issued by a judge on the basis of an affidavit by Peter J. Kenny, a lieutenant of detectives attached to the prosecutor's office, which set forth that through information received from a law enforcement officer and investigation conducted by him, he had just and reasonable cause to suspect and believe and did suspect and believe that slips, papers, records, memoranda, sheets and paraphernalia used in connection with bookmaking were concealed on the premises of Thomas Schillizzi, 191 Scotland Road, Orange, and that he had just and reasonable cause to believe that said property was being used in connection with bookmaking. 72 *N. J. Super.*, at *p.* 513. The affidavit contained no statements of the facts or circumstances either known by or told to him and upon which he based his suspicion and belief. Pursuant to the order of this court Lieut. Kenny's testimony was taken. He testified that he had received information as to the alleged bookmaking from Lieut. Kraft, who, in turn had received it by way of an anonymous letter. Lieut. Kenny made inquiries with respect to telephone listings, learned that a telephone was listed in the name of S & S Painting and Decorating Company, 191 Scotland Road, and was billed to Thomas Schillizzi, Apt. 9, and that Schillizzi also had an unlisted telephone in the same apartment. He observed Macri enter the apartment house and noted that Macri was not listed there and that no name appeared on the door of Apt. 9. He checked the arrest record of Macri and found none. He placed calls to the telephones at Apt. 9, asked to speak to John or Joe and hung up when he was told that there was no one by that name. He was specifically asked whether, when he obtained the search warrant, he told the judge of any facts or circumstances other than those set forth in the affidavit and he replied: "I have no recollection of telling him any of these things, no sir."

In *Viscito,* a search warrant was issued on the basis of an affidavit by Benjamin S. Fisher, a detective in the office of the Essex County sheriff, which set forth that he had just and reasonable cause to suspect and did suspect and believe

that books, memoranda, sheets, papers, slips and paraphernalia used in connection with the taking and registering of bets upon horse races were concealed in premises occupied by John Doe, Jane Doe and others at 16 Sheffield Drive, Apt. 3–C, Building No. 1, in the City of Newark, and that he had just and reasonable cause to suspect and believe that said property was being used in connection with bookmaking. The affidavit further set forth that his suspicions were based upon information received from informants and other witnesses and developed as the result of observation, surveillance and through information confided by other law enforcement agents. The affidavit contained no further statement as to the nature of the information received from the informants, or any statement as to the reliability of the informants, nor did it set forth any facts or circumstances bearing upon the results of the observation and surveillance. Pursuant to the order of this court, Detective Fisher's testimony was taken. He testified that he had received a telephone call from an unnamed informant from whom he received earlier tips. He stated that the earlier information received from him was "rather good" 35% of the time. Following receipt of the telephone call, he made no inquiries or investigation and applied immediately to the judge for the search warrant. He specifically stated that he gave no "indications" to the judge other than what was set forth in the affidavit.

Before Judge Crane, the State contended that the search warrants were properly issued and that the searches pursuant thereto were valid. It did not suggest before him, nor does it suggest before us, that if the warrants were improperly issued the searches may nevertheless be sustained as incident to arrest or on some other ground resting on urgent necessity. See *Eleuteri v. Richman,* 47 *N. J. Super.* 1, 21 (*App. Div.* 1957), aff'd 26 *N. J.* 506, *cert.* denied *Eleuteri v. Furman,* 358 *U. S.* 843, 79 *S. Ct.* 52, 3 *L. Ed. 2d* 77 (1958); *State v. Smith,* 37 *N. J.* 481, 492 (1962); *cf. Draper v. United States,* 358 *U. S.* 307, 79 *S. Ct.* 329, 3 *L. Ed. 2d* 327 (1959); *Carroll v. United States,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69

*L. Ed.* 543 (1925). Admittedly the officers had ample time to investigate and ascertain facts which would either support or dissipate their suspicions. And they had ample opportunity to make full showing under oath in support of their applications for warrants authorizing searches of the private dwellings in question. Judge Crane found that the affidavits which embodied the only showings before the issuing judges contained conclusions without supporting facts and were not legally sufficient to support the constitutionally required finding of probable cause. 72 *N. J. Super.*, at *p.* 516. Having determined that the warrants were improperly issued and that the ensuing searches were invalid, he ruled that the illegally obtained evidence was to be suppressed under *Mapp v. Ohio,* 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed. 2d* 1081 (1961), and the recent cases in this court which have recognized the applicability of *Mapp* to prior searches. *State v. Scrotsky,* 38 *N. J.* 14, 16 (1962) ; *State v. Smith, supra,* 37 *N. J.,* at *pp.* 488–489; *State v. Valentin,* 36 *N. J.* 41, 43 (1961). See Traynor, "Mapp v. Ohio At Large In The Fifty States" [1962] *Duke L. J.* 319, 338–342; Bender, "The Retroactive Effect of An Overruling Constitutional Decision: Mapp v. Ohio," 110 *U. Pa. L. Rev.* 650 (1962).

In dealing with the issue at hand it is vital that we view the matter in proper perspective and with the right sense of value. The requirement for search warrant is not a mere formality but is a great constitutional principle embraced by free men and expressed in substantially identical language in both our federal and state constitutions. It has its roots deep in English and colonial history. See Lasson, "The History and Development of the Fourth Amendment to the United States Constitution," 55 *Johns Hopkins University Studies in Historical and Political Science No. 2* (1937); Fraenkel, "Concerning Searches and Seizures," 34 *Harv. L. Rev.* 361, 362 (1921); Frankfurter, J., dissenting in *Harris v. United States,* 331 *U. S.* 145, 155, 67 *S. Ct.* 1098, 1103, 91 *L. Ed.* 1399, 1408 (1947). The highly abusive infringements of freedom and privacy which were the incidents of

general warrants and writs of assistance allowing arrests and searches on suspicion alone were only too well-known to the American settlers.[1] They wisely insisted on the inclusion, in the Bill of Rights, of the provision in the Fourth Amendment that the right of the people to be secure against unreasonable searches and seizures shall not be violated and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Although New Jersey's original *Constitution* in 1776 omitted a similar provision, this was remedied in its 1844 *Constitution,* and more recently in its 1947 *Constitution. Art.* I, *par.* 7.

The Amendment sets a firm standard with respect to the essentials of a search warrant.[2]  Under its terms the

---

[1] In their historical discussion of the subject, judges have often commented upon the famous remarks of James Otis in opposition to general writs of assistance. See *Boyd v. United States,* 116 *U. S.* 616, 625, 6 *S. Ct.* 524, 529, 29 *L. Ed.* 746, 749 (1886) ; *Draper v. United States,* 350 *U. S.* 307, 317, 79 *S. Ct.* 329, 335, 3 *L. Ed.* 2d 327, 334 (1959). While they have referred to the experiences in Massachusetts they have generally omitted reference to the experiences in the other colonies. These may be found set forth in *Morris, The Era of the American Revolution* (1939) *p.* 40 *et seq.* It is there pointed out that there was popular objection to the writs in all of the colonies and that in most of them judicial resistance was so great that the writs were not issued despite repeated applications. Thus in our neighboring colony of Pennsylvania, a letter dated May 10, 1768 from Chief Justice Allen expressed the opinion that there was no authority in law for the issuance of the general writ of assistance sought by the Collector at the Port of Philadelphia. *Morris, supra,* at *p.* 59. In our own State the Chief Justice had apparently evinced a similar attitude and the records indicate that no general writ of assistance was ever issued in New Jersey. See *Quincy's Mass. Rep.* 1761–1772, *p.* 508. In 1782, an act for preventing illicit trade was passed by the General Assembly of New Jersey ; section 18 of that act declared that it was lawful for a judge of the common pleas to issue a search warrant upon application "and due and satisfactory Cause of Suspicion shewn, on Oath or Affirmation." See *Act of* 1782, *c.* 32, *p.* 101 in *New Jersey Laws* 1776–1782.

[2] See Lasson, "The History and Development of the Fourth Amendment to the United States Constitution," *supra,* at *p.* 120 :

"The Amendment provides that if there is to be a search and seizure, it must be a reasonable one. The only absolute standard

search warrant is not to issue except upon probable cause, supported by oath or affirmation. The crucial determination is to be made not by the police officer but by a neutral issuing judge. Before the judge is in a position to make his determination for issuance, he must properly be made aware of the underlying facts or circumstances which would warrant a prudent man in believing that the law was being violated. See *Dumbra v. United States,* 268 *U. S.* 435, 441, 45 *S. Ct.* 546, 548, 69 *L. Ed.* 1032, 1036 (1925). Legal proof sufficient to establish guilt is, of course, not required; but suspicion and good faith on the officer's part, without more, will not suffice. See *Henry v. United States,* 361 *U. S.* 98, 102, 80 *S. Ct.* 168, 171, 4 *L. Ed. 2d* 134, 138 (1959). As the Supreme Court succinctly put it in *Nathanson v. United States,* 290 *U. S.* 41, 47, 54 *S. Ct.* 11, 13, 78 *L. Ed.* 159, 162 (1933), a search warrant may not issue unless the issuing magistrate can find probable cause from the facts or circumstances presented to him under oath or affirmation—"Mere affirmance of belief or suspicion is not enough." See *Veeder v. United States,* 252 *F.* 414, 418–419 (7 *Cir.*), cert. denied, 246 *U. S.* 675, 38 *S. Ct.* 428, 62 *L. Ed.* 933 (1918); *Baysden*

---

that is set is as to the essentials of a warrant when such is necessary, as it is in most cases. The purpose of the latter part of the Amendment of course is to safeguard against the general warrant and it does this in two ways: first, by prescribing the requirement of probable cause, necessarily peculiar to each case; and second, by making requisite the description of the particular place to be searched, the persons to be apprehended, and the objects to be seized. These requirements limit the scope of each warrant; they take the decision as to what may and what may not be done out of the hands of the officer who is to execute the warrant, and place it with the more trustworthy and sober judgment of a judicial officer. It is for the latter to pass upon the merits of the allegations and, on the basis of evidence having behind it the responsibility of an oath, to decide whether there is reasonable justification for this exceptional proceeding in invasion of the individual's privacy, and thus to determine what particular actions are justified on the basis of this showing. There is no temptation for the ministerial officer to exceed the authority which the magistrate decides to give him, for he not only thereby subjects himself to civil and criminal liability but gains no advantage over the accused and merely wastes his effort."

258

*v. United States,* 271 *F.* 2d 325, 328 (4 *Cir.,* 1959); *cf. Giordenello v. United States,* 357 *U. S.* 480, 485, 78 *S. Ct.* 1245, 1249, 2 *L. Ed.* 2d 1503, 1509 (1958); *Jones v. United States,* 362 *U. S.* 257, 269, 80 *S. Ct.* 725, 735, 4 *L. Ed.* 2d 697, 707 (1960); *United States v. Ramirez,* 279 *F.* 2d 712, 715 (2 *Cir.*), *cert.* denied, 364 *U. S.* 850, 81 *S. Ct.* 95, 5 *L. Ed.* 2d 74 (1960).

█ Whether a showing of probable cause has been made will in each case rest on its own particular footing. And the determination will aim at faithfully vindicating the constitutional requirement without, however, placing any needless obstacles to law enforcement. In *United States v. Ramirez, supra,* the affidavit stated that the affiant had reason to believe that heroin was unlawfully being concealed in the defendant's apartment and that while the affiant was present in the apartment he saw quantities of a white powder which he believed to be a narcotic. The United States Commissioner issued a search warrant on the basis of the affidavit and his action was sustained by the Second Circuit which indicated that in a close case, as this one, it would not interfere with the Commissioner's finding of probable cause. 279 *F.* 2d, at *p.* 716. On the other hand, in *Baysden v. United States, supra,* the affidavit stated that the affiant had reason to believe that counterfeit currency was being concealed in the defendant's store but failed to set forth facts in the affiant's possession which gave rise to the belief. A search warrant was issued on the basis of the affidavit but this was held to have been improper by the Fourth Circuit. In the course of its opinion, it pointed out that if the issuing magistrate were permitted to accept the belief of the officer as sufficient without inquiry as to its basis, then controlling significance would wrongfully attach "to the officer's belief rather than to the magistrate's judicial determination." 271 *F.* 2d, at *p.* 328. The court rightly noted that it was of no avail that, in the execution of the invalid warrant, evidence of the commission of the crime was secured. See *Byars v. United States,* 273 *U. S.* 28, 29, 47 *S. Ct.* 248, 71 *L. Ed.* 520, 522 (1927).

In *Giordenello v. United States, supra,* the Commissioner issued an arrest warrant on the basis of a verified complaint which set forth that the defendant had received heroin with knowledge of unlawful importation in violation of the United States Code. In the course of the defendant's arrest he was searched and a paper bag containing heroin was taken from him. Holding that the warrant had been improperly issued, the Supreme Court pointed out that it was the Commissioner's obligation to "judge for himself the persuasiveness of the facts relied on by the complaining officer to show probable cause." 357 *U. S.,* at *p.* 486, 78 *S. Ct.,* at *p.* 1250, 2 *L. Ed. 2d,* at *p.* 1509. Justice Harlan noted that the complaint contained nothing to indicate that the officer spoke with personal knowledge, and did not set forth any source for the officer's belief or "any other sufficient basis upon which a finding of probable cause could be made." 357 *U. S.,* at *p.* 486, 78 *S. Ct.,* at *p.* 1250, 2 *L. Ed. 2d,* at *p.* 1510.

In the later case of *Jones v. United States, supra,* a detective's affidavit set forth that he had received information from an informant who stated that Jones and Richardson were involved in illicit narcotic traffic and kept a supply of heroin in their apartment. The informant stated that he had gone to their apartment and had purchased narcotic drugs from them and that the narcotics were secreted in described places in the apartment. The affidavit also stated that Jones and Richardson were familiar to members of the narcotic squad, had admitted the use of narcotic drugs and had displayed needle marks as evidence of their use. The affidavit contained further matter including a statement that the informant had given previous information which was correct. In sustaining the issuance of a search warrant on the basis of the affidavit, the court held that the facts set forth need not be firsthand but may be based upon information from a reliable informer. In the course of his opinion for the court, Justice Frankfurter said:

"This affidavit was, it is claimed, insufficient to establish probable cause because it did not set forth the affiant's personal observations

regarding the presence of narcotics in the apartment, but rested wholly on hearsay. We held in *Nathanson v. United States*, 290 *U. S.* 41, 54 *S. Ct.* 11, 78 *L. Ed.* 159, that an affidavit does not establish probable cause which merely states the affiant's belief that there is cause to search, without stating facts upon which that belief is based. A fortiori this is true of an affidavit which states only the belief of one not the affiant. That is not, however, this case. The question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another. An affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." 362 *U. S.*, at *p.* 269, 80 *S. Ct.*, at *p.* 735, 4 *L. Ed. 2d*, at *p.* 707.

Our recent Rules Governing Search Warrants do not embody the federal rules and decisions in every respect.[3] *R. R.* 3 :2A. They do, however, expressly recognize, as they must, the constitutional need for a verified showing of probable cause before the issuing magistrate; and they implicitly acknowledge the basic requirement, which the federal cases have repeatedly asserted, that the showing be not merely of belief or suspicion, but of underlying facts or circumstances which would warrant a prudent man in believing that the law was being violated.

---

3 To the extent that they may depart from the formal steps set forth in the Federal Rules of Criminal Procedure without impairment of substantive rights, they are undoubtedly within this court's powers. Compare the requirement in Federal Rule 41 (c) of an affidavit with the requirement in *R. R.* 3 :2A-3 of an affidavit or oral testimony. See *Sparks v. United States*, 90 *F. 2d* 61, 64 (6 *Cir.*, 1937). To the extent that they may depart from particular federal decisions, issues may be raised which are not pertinent to the case at hand and need not be dealt with here. Compare *R. R.* 3 :2A-2 (c), with *Gouled v. United States*, 255 *U. S.* 298, 310, 41 *S. Ct.* 261, 65 *L. Ed.* 647, 653 (1921). See Traynor, "Mapp v. Ohio At Large In The Fifty States" [1962] *Duke L. J.* 319, 331; Kamisar, "Public Safety v. Individual Liberties : Some Facts and Theories," 53 *J. Crim. L. C. & P. S.* 171, 177 (1962). See also *People v. Cahan*, 44 *Cal. 2d* 434, 282 *P. 2d* 905, at *pp.* 914–915 (1955) ; *People v. McErlean*, 235 *N. Y. S. 2d* 657, 662 (*City Crim. Ct.* 1962) ; Weinstein, "Local Responsibilities for Improvement of Search and Seizure Practices," 34 *Rocky Mt. L. Rev.* 150, 166–168 (1962). Compare *Castaneda v. Superior Court*, —— *Cal. App.* ——, 26 *Cal. Rptr.* 364 (1962), *with Hurst v. People of State of California*, 211 *F. Supp.* 387 (*N. D. Cal.* 1962).

Even if we are at liberty to do so, we have no inclination whatever to restrict or undermine the great force or uniform applicability of that safeguarding requirement. See *People v. Jackson*, 22 *Ill. 2d* 382, 176 *N. E. 2d* 803, 805 (1961), *cert. denied*, 368 *U. S.* 985, 82 *S. Ct.* 600, 7 *L. Ed. 2d* 523 (1962); *Commonwealth v. Spofford*, 343 *Mass.* 703, 180 *N. E. 2d* 673, 676 (1962). *But cf. Commonwealth v. Griffin*, 200 *Pa. Super.* 34, 186 *A. 2d* 656 (1962); *Aguillar v. State*, 362 *S. W. 2d* 111 (*Tex. Cr. App.* 1962). We are convinced that the affidavits here by Lieut. Kenny and Detective Fisher wholly failed to make the required showing and were legally insufficient to support the issuance of the search warrants. See *Nathanson v. United States, supra*, 290 *U. S.*, at *p.* 47, 54 *S. Ct.*, at *p.* 13, 78 *L. Ed.*, at *p.* 162; *Baysden v. United States, supra*, 271 *F. 2d*, at *p.* 328; *State v. Racanelli*, 74 *N. J. Super.* 420, 430 (*Essex Cty. Ct.* 1962); *State v. Macri, supra*, 72 *N. J. Super.*, at *p.* 516.[4]

Lieut. Kenny's affidavit stated that through information and investigation he had reasonable cause to suspect and believe that there was bookmaking and bookmaking para-

---

[4] The earlier New Jersey cases which dealt meagerly with the sufficiency of the showing of probable cause on application for search warrant have little bearing here. See, *e. g., In re Simon*, 13 *N. J. Misc.* 196, 177 *A.* 557 (*Quar. Sess.* 1935). They generally repeated the definition of probable cause as set forth in false arrest and other civil proceedings. See *Spencer v. Anness*, 32 *N. J. Law* 100, 101 (*Sup. Ct.* 1866); *Lane v. Pennsylvania R. R. Co.*, 78 *N. J. L.* 672, 674 (*E. & A.* 1910). In the *Lane* case, the court defined probable cause in criminal prosecutions as "reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the accused is guilty of the offence with which he is charged." In *Application of Berlin*, 19 *N. J.* 522, 527 (1955), this definition was repeated in the course of an opinion which determined that the facts there set forth in the officer's affidavit were sufficient to justify the judge's issuance of the search warrant under attack. We consider that the affidavit, which may be found set forth in 72 *N. J. Super.*, at *p.* 515, satisfied the requirements of the federal cases including *Nathanson v. United States, supra*, 290 *U. S.*, at *p.* 41, 54 *S. Ct.*, at *p.* 11, 78 *L. Ed.*, at *p.* 162, and *Jones v. United States, supra*, 362 *U. S.*, at *p.* 269, 80 *S. Ct.*, at *p.* 735, 4 *L. Ed. 2d*, at *p.* 707.

phernalia at the Schillizzi apartment. The underlying facts and circumstances which gave rise to the suspicion and belief were not set forth. The affidavit did not refer to the source or reliability of the information which was transmitted through another law enforcement officer nor did it describe the results of the investigation. The officer's immediate concern was with ferreting out crimes and he understandably was entirely ready to believe that he had reasonable grounds (*Draper v. United States*, 358 *U. S.* 307, 310 *n.* 3, 79 *S. Ct.* 329, 331, 3 *L. Ed.* 2d 327, 330 *n.* 3 (1959)) for making the search. But the crucial point of the constitutional requirement is that the determination as to whether there were such grounds is to be made by the issuing judge rather than the officer; on this score the affidavit, while setting forth the officer's suspicion and belief, omitted all reference to facts or circumstances from which the judge could properly discharge his constitutional responsibility. That the officer may have had additional information in his possession which he never transmitted to the judge cannot serve to supply the omission, for the Constitution contemplates that the showing of probable cause before the judge be a sufficient one under oath. *Cf. R. R.* 3 :2A–3; *Baysden v. United States, supra,* 271 *F.* 2d, at *p.* 327; *United States v. Sims,* 201 *F. Supp.* 405, 409 (*M. D. Tenn.* 1962).

█ The affidavit by Detective Fisher was no more illuminating than was the affidavit of Lieut. Kenny. It set forth that the officer suspected and believed there was bookmaking and horse race betting paraphernalia in Apartment 3-C of the building at 16 Sheffield Drive. It stated that his suspicions were based upon information received from informants and developed as the result of surveillance and through information confided by other law enforcement agents. It did not set forth any of the underlying facts and circumstances upon which the suspicion and belief were grounded. It said nothing about the reliability of the informants and nothing about any facts disclosed by surveillance. Indeed there never was any surveillance and the sole source of the officer's informa-

tion was a telephone call from an unnamed informer whose prior information is described as having been good 35% of the time. Even that much was not disclosed to the issuing judge who had nothing before him, other than the officer's suspicion and belief, upon which to determine whether there was probable cause for the search. *Cf. Jones v. United States, supra,* 362 *U. S.,* at *p.* 269, 80 *S. Ct.,* at *p.* 735, 4 *L. Ed. 2d,* at *p.* 707.

◼ The State contends that, even though the affidavits be deemed insufficient, there should nonetheless be no suppression of the illegally seized evidence. The common law rule favored the admission of evidence though obtained through illegal search and the earlier New Jersey cases adopted the rule without discussion of its pros and cons. See *State v. MacQueen,* 69 *N. J. L.* 522, 528 (*Sup. Ct.* 1903); *State v. Lyons,* 99 *N. J. L.* 301, 303 (*E. & A.* 1923); *cf. Eleuteri v. Richman, supra,* 47 *N. J. Super.,* at *pp.* 9–12; *McCormick, Evidence* 291 *et seq.* (1954). The later New Jersey cases adhered to the rule despite the increasing number of contrary state decisions elsewhere. See *State v. Alexander,* 7 *N. J.* 585, 594 (1951), *cert.* denied, 343 *U. S.* 908, 82 *S. Ct.* 638, 96 *L. Ed.* 1326 (1952); *cf. Application of Berlin, supra,* 19 *N. J.* 522; *Eleuteri v. Richman, supra,* 26 *N. J.* 506.

The federal cases took a wholly different course. See *Boyd v. United States,* 116 *U. S.* 616, 6 *S. Ct.* 524, 29 *L. Ed.* 746 (1886); *Weeks v. United States,* 232 *U. S.* 383, 34 *S. Ct.* 341, 58 *L. Ed.* 652 (1914); *Wolf v. People of State of Colorado,* 338 *U. S.* 25, 69 *S. Ct.* 1359, 93 *L. Ed.* 1782 (1949); *Elkins v. United States,* 364 *U. S.* 206, 80 *S. Ct.* 1437, 4 *L. Ed. 2d* 1669 (1960); *Mapp v. Ohio, supra,* 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed. 2d* 1081. In *Weeks,* the Supreme Court announced the rule that evidence seized illegally by federal officers is to be excluded from federal criminal trials; Justice Day expressed the view that if the rule were otherwise the Fourth Amendment would be of no value and "might as well be stricken from the Constitution." 232 *U. S.,*

at *p.* 393, 34 *S. Ct.,* at *p.* 344, 58 *L. Ed.,* at *p.* 656. In *Wolf,* the court, although then refusing to impose the exclusionary rule of *Weeks* upon the states, noted that "The security of one's privacy against arbitrary intrusion by the police" is "implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clause." 338 *U. S.,* at *p.* 27, 69 *S. Ct.,* at *p.* 1361, 93 *L. Ed.,* at *p.* 1785. In *Elkins,* the court, after stressing the afore-quoted language, held that evidence seized by state officers during an unconstitutional search may not be received during a federal criminal trial. And finally in *Mapp,* the court, overruling *Wolf,* held that evidence obtained during an unconstitutional search by state officers is inadmissible in state proceedings as it is in federal proceedings.

The State acknowledges that *Mapp* is fully binding upon us but seeks to distinguish it on the ground that there the officers engaged in "brutish, flagrant or rude actions" while here they made their applications in good faith and before *Mapp* was decided. The fact that their action antedated *Mapp* is not significant in the circumstances presented here. See *State v. Smith, supra,* 37 *N. J.,* at *p.* 488. Nor is *Mapp* distinguishable because of its aggravating facts. The brutish conduct may have persuaded the Supreme Court that the case was the proper vehicle for dealing with *Wolf* but its ultimate holding turned on the unconstitutional search and not on the aggravating conduct. The court was satisfied that the exclusionary rule is the only effective deterrent to continued disregard of the constitutional guaranty, that the rule is the morally right one befitting our democratic society, and that adherence to it in both federal and state courts will avoid needless conflicts and promote cooperation in the solution of crime under appropriate standards. In effect, *Mapp* incorporated the exclusionary rule as part of the Constitution. As Justice Clark expressed it, all evidence obtained by searches and seizures in violation of the Constitution is "by that same authority," inadmissible in a state court. 367 *U. S.,* at *p.* 655, 81 *S. Ct.,* at *p.* 1691, 6 *L. Ed. 2d,* at *p.* 1090.

He described the exclusionary rule as "an essential part of both the Fourth and Fourteenth Amendments." 367 *U. S.,* at *p.* 657, 81 *S. Ct.,* at *p.* 1693, 6 *L. Ed. 2d,* at *p.* 1091.[5] And he noted that since the constitutional right of privacy has been declared enforceable against the states through the due process clause, it is enforceable against them by the same sanction of exclusion as is used against the federal government. 367 *U. S.,* at *p.* 655, 81 *S. Ct.,* at *p.* 1691, 6 *L. Ed. 2d,* at *p.* 1090.

The good faith of the officer would not be sufficient in a federal proceeding nor should it be viewed as sufficient here. See *Henry v. United States, supra,* 361 *U. S.,* at *p.* 102, 80 *S. Ct.,* at *p.* 171, 4 *L. Ed. 2d,* at *p.* 138; *Boyd v. United States, supra,* 116 *U. S.,* at *p.* 635, 6 *S. Ct.,* at *p.* 534, 29 *L. Ed.,* at *p.* 752; *cf. State v. Racanelli, supra,* 74 *N. J. Super.,* at *p.* 431; *People v. Politano,* 235 *N. Y. S. 2d* 712, 715 (*App. Div.* 1962). When an application for a search warrant is made to a judge, it may generally be assumed that the officer honestly suspects and believes that he has reasonable grounds for the search. But, clearly, that is not enough, for under the Constitution he must make a verified showing of probable cause. If he fails to do so, his honest suspicion and belief would not satisfy either the terms of the Constitution or the purposes of *Mapp.* Eyes may not be closed to the infringement of a constitutional right because the officer was well-meaning or the transgression is deemed slight; and erosions must at all times be carefully guarded against lest they lead to the destruction of the right itself.

---

[5] Chief Justice Warren and Justices Douglas and Brennan joined the opinion of Justice Clark. Justice Black concurred in an opinion which expressed the view that "when the Fourth Amendment's ban against unreasonable searches and seizures is considered together with the Fifth Amendment's ban against compelled self-incrimination, a constitutional basis emerges which not only justifies but actually requires the exclusionary rule." 367 *U. S.,* at *p.* 662, 81 *S. Ct.,* at *p.* 1695, 6 *L. Ed. 2d,* at *p.* 1094. See *State v. Smith, supra,* 37 *N. J.,* at *p.* 487.

State judges, no less than federal judges, have the high responsibility of protecting constitutional rights. While they, no less than law enforcement officers, are disturbed when the guilty occasionally go unpunished, they tolerate that as the incidental cost of insuring the continued effectiveness of the guaranties afforded by the Constitution to all of us as free men. The experiences in the federal sphere, and in the states which have long followed the exclusionary rule, give indication that it has increased respect for constitutional rights without impairment of law enforcement.[6] There is no reason why our ruling today should not have the same effect.

Affirmed.

WEINTRAUB, C. J. (concurring). I join in the court's opinion except so much as discusses the question whether the good faith of the officer bears upon the rule of exclusion which *Mapp v. Ohio,* 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed. 2d* 1081 (1961), finds applicable to the states. Being unsure of the reach of *Mapp,* I would express no view until a case before us should require us to do so. I do not believe this case does.

---

[6] See *Elkins v. United States, supra,* 364 *U. S.,* at *pp.* 218–224, 80 *S. Ct.,* at *p.* 1447, 4 *L. Ed. 2d,* at *p.* 1678–1681; Day and Berkman, "Search and Seizure and the Exclusionary Rule: A Re-Examination on the Wake of Mapp v. Ohio," 13 *W. Res. L. Rev.* 56, 99 (1961); Kamisar, "Public Safety v. Individual Liberties: Some 'Facts' and 'Theories,' " *supra,* 53 *J. Crim. L. C. & P. S.,* at *pp.* 179, 188. Professor Kamisar quotes the well-known statement by a former chief law enforcement officer of California that the overall effects of the exclusionary rule in his state have been excellent and that it has produced police investigations which "are more thorough and within American constitutional concepts." 53 *J. Crim. L. C. & P. S.,* at *p.* 188. He also quotes favorable expressions in other exclusionary jurisdictions and presents an analysis of recent crime statistics in California and the District of Columbia. He finds that the statistics do not furnish support for the notion that the exclusionary rule impairs law enforcement and concludes with the thought that it is "the best means available or presently feasible for enforcing guarantees of liberty and privacy." 53 *J. Crim. L. C. & P. S.,* at *p.* 193.

The State presses the "good faith" of the officer, which here can relate only to the officer's belief that what he knew constituted probable cause and that his affidavit revealed it. As to this, the short answer is that we are reviewing the judgment of the magistrate and not the judgment or action of the policeman. Whether in other settings the "good faith" of the officer could be significant need not be decided.

Here, unlike *Mapp,* a magistrate did intervene between the policeman and the search and thus to that extent the constitutional right was respected. I do not know whether the United States Supreme Court will apply the thesis of *Mapp* where a magistrate has acted, or if it will, whether it will use the same standard employed when a federal order for a warrant is involved. I think it unnecessary to forecast the answer, because I would hold that where, as here, the affidavit is palpably devoid of any basis for evaluation and decision as to whether probable cause in fact existed, the product of the search should be suppressed to vindicate our State Constitution. In these circumstances, the order of the magistrate is more an acquiescence in the request of the State than the product of independent judicial action.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.