83 N.J. Super. 563 (1964)
200 A.2d 617
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DOMINICK NATURILE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1964.
Decided May 15, 1964.
*565 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Milton A. Epstein (assigned counsel) argued the cause for appellant (Mr. Richard H. Steinberg, on the brief).
Mr. Leslie P. Glick, Union County Assistant Prosecutor, argued the cause for respondent (Mr. H. Douglas Stine, Union County Prosecutor, attorney).
*566 The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant appeals from a conviction of receiving stolen property in contravention of N.J.S. 2A:139-1. The principal ground of appeal concerns an allegedly illegal search of defendant's automobile resulting in the seizure by the police of six tires found in the trunk of the car. One of these was introduced in evidence at the trial at which defendant was convicted. The trial took place before a jury June 19 and 20, 1962.
On February 4, 1961, at about 1:30 A.M., a resident telephoned Elizabeth police headquarters to report he and his wife had just seen someone breaking into the nearby "Pires Gas Station." A radio patrol car with two police officers was dispatched to the scene. One of them, Officer Iannaccio, testified that when they arrived the resident informed them that the man came out of the gas station, got into an automobile parked nearby, and while attempting to drive away "got stuck" in the snow after a few feet (it was snowing heavily at the time). He was not observed to have carried anything out of the gas station. The man then had departed on foot, leaving the car "partially in the street." The police also interviewed one Blackshear, who was on a nearby street corner, and who told them he had seen and briefly spoken with an individual who was leaving the scene where the car was parked. He also described the person to the police. (Some time later Blackshear identified the defendant in a police line-up.) Thereafter, Iannaccio's fellow officer, who did not testify, opened the trunk of the car and the officers found therein six new tires which later turned out to have been stolen the night before from another gas station. These were the subject matter of the instant conviction.
Officer Iannaccio professed not to know whether the car trunk was locked or how his fellow officer opened it. Iannaccio also testified that he reported the license number on the car by radio-phone to police headquarters and was shortly informed that a teletype inquiry revealed a registered ownership name and address for the car identical with those of *567 defendant, who resided in Elizabeth. The testimony does not indicate whether the search of the car trunk preceded the ascertainment of the registered ownership of the car,[1] but it is clear that these events took place at about the same time, soon after the police arrived at the scene and interviewed the people mentioned above. Defendant was arrested when he went to police headquarters to claim his car several days later.
The State has not argued on this appeal that the question as to the illegality of the search of the car was not timely raised by the defendant at trial level. However, we notice the point since the trial court was of the view that objection should have been made by motion antecedent to trial. The search in this case preceded the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961) by several months. However, trial herein took place a year after that ruling, which holds evidence seized in violation of the Fourth Amendment is inadmissible in a state court criminal prosecution. When one of the stolen tires was first offered in evidence by the State, counsel for defendant (assigned) stated that he had no objection. The same position was taken as to a photograph of all the tires admitted in evidence. At the conclusion of the State's case, however, the defense moved for dismissal on two grounds, one of which was that the objects received in evidence were the result of an illegal search and seizure. The court reserved decision in order to consider whether the motion should have been made before trial, and it ultimately denied the motion.
R.R. 3:2A-6, requiring a motion to suppress illegally seized evidence to be made before trial, became effective January 2, 1963, after the trial, and therefore does not control this case. The only procedural barrier against defendant pertinent here was R.R. 1:5-1(a) which required defendant to have stated his objection to the evidence at the time adduced. State v. Smith, 37 N.J. 481, 489 (1962). However, in view *568 of the plain error rule, the importance of the constitutional right involved, the fact that objection was actually made during the trial, although not until the conclusion of the State's evidence, and the absence of objection to our consideration of the issue by the State, we shall in the interests of justice entertain it.
The search here was conducted without a warrant and was not incidental to an arrest. It can be justified as reasonable within the Fourth Amendment, therefore, only if the circumstances fairly bring it within the exception to the requirement of a search warrant generally known as the "exceptional circumstances" doctrine, referred to in Johnson v. United States, 333 U.S. 10, 14, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948); McDonald v. United States, 335 U.S. 451, 454-455, 69 S.Ct. 191, 93 L.Ed. 153 (1948); United States v. Jeffers, 342 U.S. 48, 51, 52, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Chapman v. United States, 365 U.S. 610, 615, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Ker v. California, 374 U.S. 23, 42, n. 13, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); cf. Taylor v. United States, 286 U.S. 1, 5, 6, 52 S.Ct. 466, 76 L.Ed. 951 (1932); and more aptly described as the "urgent necessity" rule in State v. Macri, 39 N.J. 250, 254 (1963). Compare the concept of "exigent circumstances" in an analogous situation mentioned by the court in Miller v. United States, 357 U.S. 301, 308-309, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).
It is of interest that no federal or New Jersey appellate decision has been found actually sustaining a search without a warrant, not incidental to an arrest, on the express basis of the exceptional circumstances rule.[2] And this notwithstanding a plethora of cases striking down searches for illegality *569 although involving situations where the police authorities may reasonably have thought it necessary from a law enforcement standpoint to search without a warrant. In United States v. Jeffers, supra, it was emphasized that while an exemption from the requirement of a search warrant lies both for searches incident to a valid arrest and in "exceptional circumstances," in both instances "the burden is on those seeking the exemption to show the need for it" (342 U.S., at p. 51, 72 S.Ct., at p. 95).[3] "The exigencies of the situation" must appear to make the by-passing of the warrant "imperative." McDonald v. United States, supra (335 U.S., at p. 456, 69 S.Ct., at p. 191). And in every case of claim of exceptional circumstances, what is measured by the court is the justification for not first obtaining a search warrant  generally speaking a sine qua non of a lawful search  in the light of the urgency of the circumstances being invoked to excuse its absence. Chapman v. United States, supra (365 U.S., at pp. 614-615, 81 S.Ct., at p. 776); Johnson v. United States, supra (333 U.S., at pp. 14, 15, 68 S.Ct., at p. 367). In both of the cases last cited the court stresses: (1) that inconvenience to the officers and the slight delay involved in processing the application for a warrant is never a convincing reason for proceeding without one; and (2) the fact alone that the officers are in possession of information of crime adequate to procure a warrant can never justify them in searching without it. Ibid. On principle and logic, these precepts must govern no matter how strong the evidence of criminal activity on the part of the person whose home or effects are searched.
*570 In the case before us the State contends the exceptional circumstances rule is applicable, and our dissenting colleague holds the same view. Before analyzing the precise facets of the instant fact-complex thought to warrant its invocation here, we look to expressions of the United States Supreme Court in the decisions cited above which have recognized the rule for an insight into its rationale. In rejecting the pertinence of the principle to the facts of the Johnson case, supra, where it was for the first time clearly formulated as a comprehensive concept, the court there said: "No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction * * *." (333 U.S., at p. 15, 68 S.Ct., at p. 369.) Essentially similar expressions are to be found in the later cases, e.g., Chapman v. United States, supra (365 U.S., at p. 615, 81 S.Ct., at p. 776), supplemented by allusions to situations of imminent danger to life, health or the like, e.g., McDonald v. United States, supra (335 U.S., at p. 454, 69 S.Ct., at p. 191); see also footnote 2, p. 4, supra.
Reflection on the excerpt quoted above from the Johnson case, illuminated by the facts of that and other decisions mentioning the same criterion of "exceptional circumstances," makes it evident that the controlling rationale (of course, assuming probable cause) is that if first going for a search warrant means that items of seizable evidence or the person of a suspect on which or whom the police are closing in will escape seizure or arrest, the prerequisite of the warrant may be dispensed with. In all the cases mentioned the facts showed that the time which would have been involved in first obtaining a warrant would not have impaired the then existing likelihood of seizing either the suspect or the evidence, as the case might be, on the spot. In addition to the Johnson and McDonald cases, supra, see, exemplifying the foregoing, United States v. Jeffers, supra (342 U.S., at p. 52, 72 S.Ct., at p. 93); Walker v. United States, 225 F.2d 447, 450 (5 *571 Cir. 1955); Hall v. Warden, Maryland Penitentiary, 313 F.2d 483, 493 (4 Cir. 1963).
It is further plain, significantly to the present case, that when the Johnson and other cited opinions refer to the fact that "no suspect was fleeing or likely to take flight," they are speaking in the context of the searching officers assumedly coming upon fleeing or imminently fleeing suspects taking the evidence in question with them or destroying it. In none of the opinions were the facts suggestive of an intent by the court to negate the hypothesis that in the specific case under consideration a search of premises or of a vehicle without a warrant was necessitated by the fact that the suspect was already gone therefrom and in the process of flight. In Johnson, where the "fleeing suspect" notion was born, for example, the suspect was in the apartment when entry took place, and the court's allusion to a fleeing suspect was obviously in relation to the fact that there was no need to fear she would flee or destroy evidence before a warrant could be obtained.[4] The *572 same is true as to the facts involved in McDonald v. United States, supra, where the court said: "Here * * * the defendant was not fleeing or seeking to escape. Officers were there to apprehend petitioners in case they tried to leave. Nor was the property in the process of destruction * * *. No reason, except inconvenience of the officers and delay in preparing papers and getting before a magistrate, appears for the failure to seek a search warrant." (335 U.S., at p. 455, 69 S.Ct., at p. 193) (emphasis ours).
It is noteworthy that in the recent case of State v. Scrotsky, supra, which involved a search of an apartment for stolen articles conducted immediately after the suspect was seen fleeing over a back fence, there held illegal, there was not even a suggestion of possible justification for that search without a warrant on the supposed basis that the circumstance of the flight of the suspect made the case one of exceptional or necessitous circumstances excusing obtaining a search warrant. As in Ker v. California, supra, the circumstances may have justified an arrest of the suspect without a warrant, but a search of his home or car without a warrant and not incidental to his arrest is an altogether different thing.
We turn to consideration of the respective positions of the parties in the light of the specific facts at hand. Preliminarily, defendant argues there was no showing of probable cause, a conceded requisite even if exceptional circumstances excused obtaining a warrant. We are unable to agree. There was cogent evidence that a person had broken into the nearby gas station and tried to get away in this car. There thus was a reasonable basis for the police to believe that a crime had been committed and that the perpetrator of it had used this car in the criminal exploit. A search warrant, if applied for, would have properly issued to search the car for weapons, other implements of the unlawful activity, or possibly fruits of the crime. But this is as far as we can go in accord with the State's position. There has been no showing of a right on the part of the police to search the trunk of this vehicle *573 without first obtaining a search warrant. It is fundamental that the obviousness of the commission of a crime by the possessor of the place or thing to be searched does not lessen one whit the essentiality of the paramount objective of the Fourth Amendment  that before the search the inferences of criminal activity "be drawn by a neutral and detached magistrate instead of being judged by the [police] officer * * *." Johnson v. United States, supra (333 U.S., at p. 14, 68 S.Ct., at p. 369); State v. Macri, supra (39 N.J., at p. 257).
The fact that the search was of a "movable vehicle" (Johnson, supra) is here inconsequential since this vehicle was immobilized, under full control of the police, the owner-suspect gone for the time being. One officer could have been left to guard the car and contents while another went for a search warrant. See United States v. Jeffers; Walker v. United States; Hall v. Warden, Maryland Penitentiary, all supra. In view of the lateness of the hour and other circumstances, a judge legally could and undoubtedly would have issued a warrant on sworn oral testimony without an affidavit. See State v. Moriarty, 39 N.J. 502, 503 (1963); State v. Parsons, 83 N.J. Super. 430 (App. Div. 1964). In terms of securing from loss or destruction any seizable articles in the car, no supervening necessity arising from the delay which would attend the obtaining of a warrant is made to appear. In the aspects of the problem just discussed, the case is controlled by the very recent decision of the United States Supreme Court in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In that case, New-port, Kentucky, police arrested three men in a car for vagrancy, and under circumstances creating suspicion of theft of the car. They towed the vehicle to a garage and impounded it. After the men were booked at the station the police searched the car without a warrant and discovered weapons and paraphernalia suited for use in a robbery. This evidence was instrumental in securing defendant's conviction for conspiracy to rob a bank. The court held the search was not incidental to the arrest (remote in time and place) and therefore *574 illegal because without a warrant. It said (at pp. 366-367 of 376 U.S., at p. 883 of 84 S.Ct.):
"* * * Our cases make it clear that searches of motor cars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible. E.g., Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 [39 A.L.R. 790] (1925); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Common sense dictates, of course, that questions involving searches of motor cars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motor car. See Carroll v. United States, supra, 267 U.S., at 153, 45 S.Ct. 280, 69 L.Ed. 543. But even in the case of motor cars, the test still is, was the search unreasonable. Therefore we must inquire whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made." (Emphasis ours)
Thereafter, after holding the search not incidental to the arrest, the Court said (at p. 368 of 376 U.S., at p. 883 of 84 S.Ct.):
"* * * The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime  assuming that there are articles which can be the `fruits' or `implements' of the crime of vagrancy. Cf. United States v. Jeffers, 342 U.S. 48, 51-52, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See Carroll v. United States, supra, 269 U.S., at 153, 45 S.Ct., at 285, 69 L.Ed. 543. * * *" (Emphasis ours)
Obviously the same rationale applies here. There was no need that the police search without warrant in order to assure themselves of ultimate possession of any seizable items of evidence in the car. Any fruits or instrumentalities of any crime or any contraband therein were securely under their control.
In respect of the reference to fleeing suspects in the Johnson case, supra, we have already demonstrated that the sense *575 of that allusion was to the potentiality that a suspect attempting to flee might remove evidence from the place to be searched or destroy it before the search warrant could be obtained. That rationale does not apply here since the suspect was already gone when the police arrived.
The State, on which, as seen above, rests the burden of proof that a search not attended by a warrant or an arrest is justified by the exigencies of the situation, has not argued that the interest of the police in identification and apprehension of the fugitive justified searching the vehicle to find clues for those purposes without the delay attendant upon getting the warrant. As indicated, the State takes the position that the police knew who the owner of the car was (and that he had a criminal record, says its brief) as a result of the teletype report before the police searched the car. But our dissenting colleague nevertheless points out that the police could have regarded the car as possibly stolen, that they "were in fresh pursuit of the criminal, had come upon an instrumentality used by him in his criminal activity," and "[p]rompt police action was necessary if the criminal was to be identified and apprehended."
The dispositive response to these observations is that the purpose of summary search thus hypothesized would be illegal. Even search warrants have never been authorized to be used except as to articles in respect of which the public has an interest "in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken." Gouled v. United States, 255 U.S. 298, 309, 41 S.Ct. 261, 265, 65 L.Ed. 647 (1921). The category of seizable objects is described as including "the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime." Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399 (1947). Obviously, objects which would be merely evidentiary *576 clues as to the identity or whereabouts of an absent or fleeing suspect, and thus useful in apprehending him, are not within the permissible category, nor has it ever been so held or suggested. (R.R. 3:2A-2 does not authorize a warrant to search for and seize such objects.)
It is instructive that the controlling decisions seem uniformly to the effect that the analogous police objective of a search for the purpose of obtaining articles which are evidence of commission of crime but do not fall within the category of permissible objects of search above enumerated would offend the Fourth and Fifth Amendments. See State v. Smith, supra (37 N.J., at p. 488), recognizing that in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), "[t]he thesis of the court was that the Fourth Amendment forbade a search for inculpatory evidence as such, and in that respect the Fourth subserved the same objective of the Fifth's ban against self-incrimination. Thus it followed that a court order upon a defendant to produce mere evidence ran afoul of both constitutional provisions." (Emphasis that of Supreme Court.) The Boyd case has continued to be cited as authoritative by the United States Supreme Court until as recently as Mapp v. Ohio, supra (367 U.S., at pp. 646-647, 662-663, 666, 81 S.Ct., at p. 1684), and Ker v. California, supra (374 U.S., at p. 30, 83 S.Ct., at p. 1623). Uniformly following the rule against the constitutionality of search and seizure of articles merely evidentiary in nature are United States v. Lefkowitz, 285 U.S. 452, 464-465, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775 (1932); Gouled v. United States, supra (255 U.S., at pp. 309-311, 41 S.Ct., at p. 261); Harris v. United States, supra (331 U.S., at p. 154, 67 S.Ct., at p. 1098); Go-Bart Importing Co. v. United States, 282 U.S. 344, 358, 51 S.Ct. 153, 75 L.Ed. 374 (1931); and see Honig v. United States, 208 F.2d 916 (8 Cir. 1953); Morrison v. United States, 104 U.S. App. D.C. 352, 262 F.2d 449 (D.C. Cir. 1958). And note the plain implication in the excerpt quoted above (p. 574) from Preston v. United States, supra, that a search to prevent destruction *577 of "evidence" of a crime would have to be confined to "fruits" or "implements" of the crime, etc.[5]
But even beyond the impermissibility of the thus hypothesized object of the search  clues to the whereabouts of the missing suspect  (which we repeat has never been advanced by the State), there is apparent the extremely conjectural nature of the projected possibility that a search of the vehicle, whether or not stolen, would in fact furnish such information. Thus, weighing the possible practical benefit, in terms of catching the suspect, of permitting the police to make the search before the delay attendant upon procuring a search warrant, as against the impairment by that course of the salutary and overriding constitutional objective that the police obtain search warrants as a routine practice in all except truly exigent circumstances (or where incident to lawful arrest), the balance, in our judgment, here preponderates heavily in favor of subserving the latter objective. Certainly the State has not carried or even attempted to carry its burden of proof to the contrary.
The books are full of cases invalidating searches of premises of absent criminal suspects under circumstances where it might well have been thought likely or possible that the search might disclose information as to where the absent suspect might be found, and thus attempted to be justified as *578 facilitating his early apprehension. But in none do we find any such suggestion advanced or considered. See, e.g., Stoner v. California, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); State v. Scrotsky, supra; Walker v. Peppersack, 316 F.2d 119 (4 Cir. 1963); Green v. Yeager, 223 F. Supp. 544 (D.N.J. 1963).
The references in the dissenting opinion herein to the police having come upon an "instrumentality used by [the suspect] in his criminal activity" and to the police officer's testimony that it was "routine police work" summarily "to inspect" a "getaway" car prompt some further precautionary observations. True, as we have conceded above, there was probable cause to believe that this was a car used for a criminal purpose. The vehicle as an entirety could thus have arguably been seized and impounded for any proper purpose by the police, as was done by the police in Preston v. United States, supra, before they searched the car there involved. As such an instrumentality, it was fair prey to summary inspection by the police insofar as concerned anything visible from the outside without a search of its contents. Cf. State v. Smith, supra (37 N.J., at pp. 496-497). But the car was nonetheless a normal and customary type of repository of the private effects of its owner. As such, and in that function, it was immune from search and seizure of its non-visible contents by the police unless in a manner consonant with the Fourth Amendment, as fully as was held by the court in the Preston case, supra, with relation to the impounded car there searched by the police without a warrant. We are reminded that "effects" as well as "houses" are expressly covered by the language of the Fourth Amendment. United States v. Jeffers, supra (342 U.S., at p. 51, 72 S.Ct., at p. 93). It would be annihilative of the Fourth Amendment in respect of the privacy of automobiles as repositories of personal effects if, by the bootstrap of probable cause to believe the car had been used for criminal purposes and consequent seizure of the car as an entirety (as a criminal instrumentality), the police could on that basis alone lift themselves above the vitally protective requirement of an application for a search warrant *579 before invading the non-visible interior of the vehicle. The whole long line of cases involving searches of automobiles contains no suggestion of any possibility of evasion of the Fourth Amendment by means of the notion that if a car is a reasonably suspected instrumentality of a crime, it may, since open to public view as a whole, ipso facto be searched for its non-visible contents without a warrant.[6] We reject it as totally at odds with the fundamental purpose of the Amendment. From its acceptance there would be no logical impediment to indoctrination of the unthinkable concept that if a home or store were reasonably suspect as a place of criminal activity, such as gambling, prostitution or narcotics, it would be subject to labelling as an "instrumentality of crime" susceptible to seizure as such as an entirety without a warrant since openly visible, and then ipso facto searchable in its interior, still without a warrant (or attendant arrest).
We are frequently reminded that it is for the courts to accord liberal, not grudging enforcement of the Fourth Amendment, e.g., State v. Macri, supra (39 N.J., at pp. 265-266); United States v. Lefkowitz, supra (285 U.S., at p. 464, 52 S.Ct., at p. 420). We do not have one law of search and seizure for narcotics and gambling cases and another for breaking and entering or theft. The meanness of the offender or the gravity of his crime does not decrease, but rather accentuates the duty of the courts to uphold and dispassionately apply the settled judicial criteria for lawful searches under the Amendment. For it is the hard case which sometimes proves the Achilles' heel of constitutional rights, even as it tends to make bad law in other areas. We are fully satisfied not only that the failure to obtain a warrant before this search was made transgressed the limitations of the Fourth Amendment, *580 but that no significant law enforcement interest will be impaired if in similar future instances the police take the trouble to obtain a warrant, guarding the car in the meanwhile, before invading the closed interior of the vehicle. We do not here apply our private concepts of public policy, but those ordained in fundamental law. See the cogent pertinent comments for this court by Judge Lewis in State v. Evans, 78 N.J. Super. 437, 445-446 (App. Div. 1963).
Reversed and remanded.
SULLIVAN, J.A.D. (dissenting).
In the majority opinion my brethren hold that the police officers had probable cause for the search of defendant's automobile. I fully agree with this holding. However, they conclude that the search was illegal for lack of a search warrant. With this conclusion I do not agree.
Ordinarily, the legality of a non-consensual search depends on the existence of a properly issued search warrant. A search without a warrant is lawful only when incidental to a lawful arrest, or where exceptional circumstances are present justifying the action of the officers. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951).
In the instant case, concededly the police did not have a search warrant. Nor was the search incidental to a lawful arrest. Therefore, unless exceptional circumstances were present justifying the action of the officers, the search was illegal. The term "exceptional circumstances," however, is at best indefinite. The Supreme Court of the United States, while it has given exceptional circumstances a separate status as an exception to the general rule requiring a search warrant, has not attempted to spell out what is encompassed by the exception. In Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1947), the court, in holding that exceptional circumstances were not present, stated that the searching officer must show something more than mere inconvenience and delay. It also observed that no suspect was fleeing or likely to take flight and that the search was of permanent *581 premises, not of a movable vehicle. To the same effect is McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), where the court observed that the officers were not responding to an emergency nor was the defendant fleeing or seeking to escape. "We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." 335 U.S., supra, at p. 456, 69 S.Ct., at p. 193. See also State v. Macri, 39 N.J. 250, 254 (1963), "urgent necessity."
No hard and fast rule can be framed as to what constitutes exceptional circumstances, although it would appear to include a fleeing suspect stuation. Of course, probable cause for the search must always exist. Exceptional circumstances relate only to relaxing the requirements for a warrant on the grounds of emergency.
This case would appear to fall within the exceptional circumstances rule. Here a citizen had telephoned the police in the middle of the night to report that he had observed a person breaking into a gas station. Officers were immediately dispatched to the scene. However, when they arrived they were told that the person had left the gas station and tried to drive away in an automobile which became stuck in the snow. According to the witness, the man then departed on foot, leaving the automobile in the snow. The police were at the scene of the crime shortly after it is alleged to have taken place. They had reasonable grounds to believe that a breaking and entering had been committed or attempted. The getaway car was pointed out to them. Actually they were in fresh pursuit of the criminal, had come upon an instrumentality used by him in his criminal activity, and figuratively were only a few steps behind him. Prompt police action was necessary if the criminal was to be identified and apprehended. What was more reasonable than to inspect the very instrumentality in which the criminal attempted to make an escape. As the officer testified, this was routine police work. The inspection *582 or search might identify the criminal or his whereabouts, and time was of the essence. Cf. Morrison v. United States, 104 U.S. App. D.C. 352, 262 F.2d 449, 454 (D.C. Cir. 1958). The fact that the police had or could have ascertained the name and address of the registered owner of the car was not conclusive. The vehicle might well have been stolen. As it eventuated, defendant was not apprehended for several days. However, at the time the police did not know but that an examination of the automobile might lead them directly to the suspect.
It is suggested that the police could have stationed one man at the car until a warrant was obtained. Concededly, they could have done this. However, it would have entailed the hurried preparation of legal papers, the adequacy of which subsequently might be subjected to a searching judicial inquiry, and the presentation of such papers to some available judicial officer, all at two o'clock in the morning in the middle of a heavy snowstorm. It was not a mere matter of inconvenience or delay. The real problem was that in the interim the officers would have had to temporarily abandon their pursuit while the criminal was in full flight with added opportunity to make his getaway. Cf. Johnson v. United States, 333 U.S., supra, at p. 15, 68 S.Ct., at p. 367.
I would hold that exceptional circumstances were present justifying a search without a warrant.
NOTES
[1] The State's brief asserts as a fact that the search took place after the information was obtained. The matter is not critical to our decision.
[2] But see Wayne v. United States, 318 F.2d 205 (D.C. Cir. 1963) (an abortion prosecution), where one judge took the view that information to the police indicating the possibility a woman was dying was an emergent circumstance justifying an otherwise illegal entry into a doctor's office; cf. State v. Hoyt, 21 Wis.2d 284, 124 N.W.2d 47 (Sup. Ct. 1963). And see State v. Hayeck, 74 N.J. Super. 243, 250 (Cty. Ct. 1962), where one ground for sustaining a search of a store without a warrant was the likelihood evidence would otherwise be destroyed. Compare People v. Edgar, 32 Cal. Rptr. 41, 383 P.2d 449 (Sup. Ct. 1963).
[3] Our own courts recognize that police entry and seizure of one's effects without a search warrant for use against one in a criminal prosecution, "without more, makes out a prima facie case for suppression of the seized evidence." State v. Scrotsky, 39 N.J. 410, 414 (1963).
[4] The inquiry suggests itself as to why the Johnson court discusses the "fleeing suspect" aspect of "exceptional circumstances" in terms of relation to exemption from a search warrant rather than an arrest warrant, in view of the rule that a search incident to a valid arrest is lawful without a search warrant. The answer would appear to be that the court was then already considering adopting the rule announced in Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948) (the voting division of the court being identical in both cases) that even in the case of a search incident to a lawful arrest a search warrant must be obtained if the officers have sufficient time to do so before searching. The Johnson case was argued December 18, 1947 and decided February 2, 1948. Certiorari was granted in Trupiano December 15, 1947 (332 U.S. 841, 68 S.Ct. 263, 92 L.Ed. 413). The fact that the court later overruled the Trupiano rule in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), does not affect the validity of the foregoing observation. The later United States Supreme Court cases cited above seemingly repeated the Johnson "exceptional circumstances" dictum uncritically, generally in haec verba. Today, of course, under Rabinowitz, a valid arrest of a person involved in such situations as the defendants in Johnson and McDonald v. United States, supra, would render academic the question of exceptional circumstances to excuse getting a search warrant since a search without warrant incident to the arrest would be automatically valid.
[5] It has not escaped us that R.R. 3:2A-2(c) authorizes issuance of a search warrant for property "[c]onstituting evidence of or tending to show any such violation [of the penal laws of this State or any other State]." The constitutionality of that provision in the light of the foregoing authorities has not yet been raised. But see State v. Macri, supra (39 N.J., at p. 260, n. 3). The rule became effective January 2, 1963. Subsequently it was held, in Ker v. California, supra (374 U.S., at p. 34, 83 S.Ct. 1623), that the "fundamental  i.e., constitutional  criteria" of a reasonable search established by the United States Supreme Court are binding on the States.

In any event, as noted above, R.R. 3:2A-2(c) would not authorize a search for clues to the whereabouts of an absent suspect for the purpose of apprehending him.
[6] The requirement for a search warrant in the search of an automobile is relaxed only in respect of the mobility of the vehicle. Preston v. United States, supra; Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); in all other respects the Fourth Amendment applies. Ibid. For another discussion of the Fourth Amendment in relation to automobiles, see State v. Taylor, 81 N.J. Super. 296, 311-312 (App. Div. 1963).