94 N.J. Super. 125 (1966)
227 A.2d 139
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM B. PURYEAR, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1966.
Decided November 22, 1966.
Petition for Rehearing Denied and Opinion Modified February 23, 1967.
*127 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. William J. Gearty argued the cause for appellant (Mr. Thomas E. Durkin, Jr., attorney).
Mr. Barry H. Evenchick, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Prosecutor of Essex County, attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant William B. Puryear appeals from a conviction of unlawfully keeping a place to which *128 persons may resort for engaging in gambling (1962 indictment) contrary to the provisions of N.J.S. 2A:112-3, and from a conviction of knowingly possessing lottery slips (1964 indictment) in violation of N.J.S. 2A:121-3(b). The indictments were consolidated for trial since each stemmed from the same investigational episode.
The essential facts as revealed by the record are:
On November 5, 1962 one Joseph Laico, of the Newark Bureau of Industrial Hygiene and Air Pollution Control, was assigned to investigate a complaint that an odor of "coal gas" was emanating from the second floor apartment at 500 North Ninth Street. Detecting an odor at the premises and not being able to gain entry, he summoned the police emergency squad. Sergeant Sheehan and Officers Harrington, Lueddeke and Sayre responded to the call. They were followed by Patrolmen Roberts and Masterson in a police radio-patrol car. Harrington stated, "It was an odor and thinking that there may be people inside, it was our duty to go in and check it out." The officers ascended the back stairway; Lueddeke opened the door after breaking a pane of glass to unlock it from the inside, and then Harrington and Sayre, wearing gas masks, entered the premises. It is conceded that they did not have a search warrant.
No one was present in the apartment. Throughout the various rooms, the officers found a number of burning sulphur candles; they were promptly extinguished, and the place was then ventilated. Upon observing adding machines and slips which "looked suspicious," the officers conferred with Sergeant Sheehan. He, in turn, summoned detectives from the Second Precinct whose duties "were to investigate complaints of gambling, vice and liquor violations." Thereupon, Detectives Satter, Valickas, Poshywak, Donaleski and Lieutenant Manghisi were dispatched to the scene. Four of these officers gave evidence as to what was found in the apartment, viz.: three adding machines; lottery slips on the kitchen table; an open shopping bag on the living room floor containing lottery slips; pencils; pads; clothing; a hat initialed W.B.P.; prescription *129 bottles and a 1961 automobile driver's license bearing defendant's name taken from the top of a dresser in the bedroom; and a cigar box containing miscellaneous papers including a bank book and a "gas" bill in Puryear's name.
That same day, pursuant to directions of Lieutenant Manghisi, a warrant was obtained for the arrest of defendant who was soon located and apprehended. He had in his possession two keys to the apartment where the inculpatory evidence was located.
The State established, through a local realtor whose office managed the property, that 500 North Ninth Street was owned by Bursam Realty Co., Inc. The realtor's records disclosed that no rents were collected for the second floor apartment during the year 1962. Bursam's annual corporate reports filed with the Secretary of State for 1961 and 1963 (apparently no statement was filed for 1962) revealed that defendant was the president and a director of the company in 1961 and a director in 1963.
Puryear's testimony as to his alleged residence and the arrangements he had made with Hamilton Jones for occupancy of the apartment was uncorroborated. Defendant admitted his right to use the premises, he had keys thereto, he was an officer and director of the corporate owner of the building, no rent for the living quarters had been collected for the year 1962, and some personal effects belonging to him were in plain view in the apartment. Furthermore, he testified that it had been over three years since he last saw Jones, and that he (Puryear) had "searched high and low for him."
Defendant testified that he was a resident of 49 Delavan Avenue in Newark, where he lived with his brother Victor and his brother's wife Shirley; he had made arrangements that Hamilton Jones occupy the second floor apartment at 500 North Ninth Street, reserving to himself (defendant) the right to use the apartment "to relax and to entertain"; and that he observed "nothing unusal" during the time that Jones occupied the apartment. Defendant denied that he had anything to do with the lottery paraphernalia. Neither *130 Jones, defendant's brother nor his sister-in-law was produced as a witness.
Defendant's appeal, in essence, is grounded on three major contentions: (1) his motions for judgment of acquittal on each of the indictments should have been granted; (2) his pretrial motion to suppress evidence should not have been denied; and (3) the trial court erred when it failed to sustain objections to the admissibility of certain evidence and refused to hear additional proofs on the issue of the validity of the search that was made without a warrant.

I
The 1962 indictment, as amended, charged that the defendant "did unlawfully and knowingly keep a place * * * to which persons might resort for the purpose of gambling in any form * * *" in violation of N.J.S. 2A:112-3. The fair import of that language, applying the strict interpretation which statutes defining crimes should receive, Neeld v. Giroux, 24 N.J. 224, 229 (1957), is that the offense prohibited by the Legislature and the crime for which defendant was accused is the keeping of a place with the intent that persons should resort thereto for making bets or gambling of any kind. See State v. Clark, 137 N.J.L. 10, 13 (Sup. Ct. 1948), affirmed per curiam 137 N.J.L. 614 (E. & A. 1948), and note the language quoted therein from the opinion of Mr. Justice Dixon in State v. Ackerman, 62 N.J.L. 456, 458 (Sup. Ct. 1898).
It is plain from the testimony of the detectives that during their presence in the tenement in question defendant did not make an appearance, no phone calls were received, no one entered the premises to gamble or make bets, and the only paraphernalia found associated with gambling were adding machines, lottery slips, pads and pencils. There was no evidence that defendant's apartment was maintained as a place to which people might resort for the purpose of betting or gambling.
*131 Detective Valickas, who qualified as an expert in the investigation of gambling offenses, conceded under cross-examination that persons who want to gamble or make lottery bets do not go to a place like 500 North Ninth Street. He testified:
"Q. And only after the bet has been made do the papers come there, representing a then completed transaction, is that correct?
A. That's right, sir.
Q. And the limited function of an office like this is the gathering of these bets which were completed transactions?
A. Yes, sir."
Lieutenant Manghisi, an experienced lottery investigator, characterized the apartment as "an office" and stated, "I would say no betting is carried on in a place like that."
At the close of the prosecutor's case the proofs with respect to the first indictment, giving the State the benefit of all proper inferences, were inadequate to sustain the conviction, and defendant was entitled to a judgment of acquittal under the test laid down in State v. Smith, 32 N.J. 501, 521 (1960), certiorari denied 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961).
We reach a different conclusion, however, as to the second indictment.
As stated in the case of State v. Brown, 67 N.J. Super. 450, 455 (App. Div. 1961): "In short, `to possess' means `to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature'." The general authorities treating the subject of possession and constructive possession are manifold, and we note only a few: 73 C.J.S., Property, § 14, pp. 197, 198, 202-204; 42 Am. Jur. Property, § 42, p. 219; Restatement, Law of Torts, § 216, p. 551; 3 Wharton's Criminal Law & Procedure, Gambling and Lotteries, § 939, p. 66 (1957). See also State v. Labato, 7 N.J. 137, 148-150 (1951), and State v. Reed, 34 N.J. 554, 557 (1961), for a discussion of the elements of possession.
*132 From the congeries of the State's proofs a jury could reasonably find that the defendant was, in fact, in "knowing possession," management and control of the apartment and the contraband contents thereof. Contra, State v. Mungioli, 69 N.J. Super. 365 (App. Div. 1961), where the complex of the State's proofs was insufficient to meet the State v. Smith, supra, test. Here, the evidence was not so attenuated as to preclude jury consideration, and the motion for judgment of acquittal as to the 1964 indictment was properly denied.

II
At the pretrial hearings on defendant's motion to suppress "all materials and evidence seized by the arresting officers," two basic arguments were urged in support of the motion.
First, when Inspector Laico called the emergency squad police, they, as well as the patrolmen and detectives who later arrived at the scene, became representatives of the hygiene-pollution bureau and were subject to the restrictive provisions of a local municipal ordinance creating and defining the responsibilities of the bureau and its employees. The ordinance, in pertinent part, provides that:
"All information obtained by the Chief and his representatives on such inspection shall, except as it relates directly to air pollution, be kept strictly confidential and such information shall be employed by the Chief only in connection with the enforcement of this Ordinance and for no other purpose whatever." Revised Ordinances of the City of Newark, Cum. Supp. 2A.59 (1959)
Defendant contends that the judiciary should not countenance a violation of this ordinance by allowing the police officers to testify as to confidential information discovered in pursuit of official duties discharged within the ambit of the bureau's responsibility.
The bureau is a governmental agency separate and distinct from the Newark Police Department. The police officers were summoned to deal with a situation which seemingly involved possible peril to anyone who might have been in the *133 apartment. They responded and acted in their capacity as law enforcement officers and exercised independent judgment pursuant to the inherent powers of policemen in dealing with an emergent situation. Cf. State v. Taylor, 38 N.J. Super. 6, 30 (App. Div. 1955); Jasaitis v. City of Paterson, 48 N.J. Super. 103, 111 (App. Div. 1957).
There is no claim that obnoxious odors did not emanate from the apartment. The police were not at defendant's property for the purpose of making an inspection of the premises. The non-disclosure provisions of such a health ordinance are inapplicable to police officers while engaged in official activities designed to alleviate an apparent emergency. We note that Inspector Laico of the bureau died prior to a conclusion of the pretrial hearings so no evidence could have been anticipated at the jury trial as to any confidential observations which he might have made.
The second theory pressed before the pretrial hearing court, and reasserted in defendant's brief on appeal, is that the police entry was unlawful, the seized lottery paraphernalia were the "fruit of the poisonous tree," and that searches and seizures without a warrant are not to be given judicial sanction unless they come within the orbit of the following exceptions to the general rule:
"(a) with the consent of the person arrested, United States v. Mitchell, 322 U.S. 65 [64 S.Ct. 896, 88 L.Ed. 1140] (1944).
(b) incidental to a lawful arrest, United States v. Rabinowitz, 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653] (1950).
(c) in vehicular contraband cases, Carroll v. United States, 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543] (1925)."
There is language in some of our decisions, notably State v. Naturile, 83 N.J. Super. 563 (App. Div. 1964), that lends apparent support to defense counsel's interpretation of the applicable law. Compare State v. Hayeck, 74 N.J. Super. 243 (Cty. Ct. 1962). In Naturile this court made the observation:
"It is of interest that no federal or New Jersey appellate decision has been found actually sustaining a search without a warrant, not *134 incidental to an arrest, on the express basis of the exceptional circumstances rule." (83 N.J. Super., at p. 568)
In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), it was recognized that "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with." That Court however, absent consent, has applied the exceptional circumstance doctrine only in situations where the search was incident to a valid arrest or in moving vehicles cases. But, certiorari was denied in United States v. Barone, 330 F.2d 543 (2 Cir. 1964), certiorari denied 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964), where the police, hearing loud screams in the dead of night emanating from a rooming house, demanded entrance to the room from which the noise came. Having found nothing amiss in the main area of the apartment, the police entered the bathroom and one of the patrolmen noticed the "commode" where pieces of counterfeit paper money were floating. After retrieving what was in plain view, further pieces were recovered by pulling the chain of the water closet. The circuit court, after finding that the search had been justified "by the discovery of the first pieces, which made it apparent that unless immediate measures were taken, additional evidence of a crime would be destroyed," determined that the presence of the police in the apartment was lawful and that no error was committed in the denial of the motion to suppress evidence. Accordingly, defendant's conviction was affirmed.
In a prior case, Wayne v. United States, 115 U.S. App. D.C. 234, 318 F.2d 205 (D.C. Cir. 1963), certiorari denied 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963), Judge Burger, in a concurring opinion, discussed many exigent circumstances which would justify the police in making forcible entry into a dwelling house. After the comment, "Neither the Constitution, statutes nor judicial decisions have made the home inviolable in an absolute sense * * *. Breaking *135 into a home by force is not illegal if it is reasonable in the circumstances," and illustrating incidents where a warrant is not required, he remarked:
"As I have already suggested, evidence of a fire or of escaping gas would warrant public authority to enter by any available means if there was not a prompt response to knocking. That such an entry would be an intrusion is undoubted but here we reach the balancing of interests and needs." (318 F.2d, at p. 212)
The police in that case made forcible entry to aid "a dying or unconscious person" who was the subject of an attempted abortion and the testimony of the coroner about the condition of the decedent and the cause of death was held admissible.
The prosecution of Puryear projects abnormal events. The police officers broke into a place of residence, without a warrant, not for the purpose of making an arrest on probable cause, but rather to avert a possible disaster from what reasonably appeared at the moment to be a developing emergency.
We find, in the instant matter, that the Newark police officers lawfully entered defendant's apartment and upon discovering, in plain view, equipment and paraphernalia identified with gambling and lottery, they had the right and duty to seize the contraband. Ker v. State of California, 374 U.S. 23, 33, 83 S.Ct. 1623, 1629, 10 L.Ed.2d 726 (1963); State v. Griffin, 84 N.J. Super. 508, 519 (App. Div. 1964).
Defendant also contends, assuming the legality of the entry by the officers in response to the existing emergency, that the subsequent entry by the detectives constituted an illegal search without a warrant. The continuity of the police procedure employed should be nonetheless effective because the officers, upon discovering evidence of a "suspicious" character, refrained from seizure thereof until the specialists in the pertinent field of criminality had been called upon to identify the criminal nature of the evidence. Certainty, before action, is generally a commendable precept to be followed, especially where, as here, it served defendant's rights as well as the State's interests. Had the emergency *136 squad officers been mistaken in their suspicions, the gambling experts' determination would have saved defendant from an arrest.
Defendant's motion in advance of trial was properly denied.

III
Counsel for defendant made a pretrial motion to inspect all paraphernalia and evidence seized by the State, and his pretrial motion to suppress evidence was directed to "all materials and evidence seized." No appeal was taken from the interlocutory order denying his motion. It is now urged that the record adduced on the motion to suppress was completely silent as to the seizure of the personal items, bearing defendant's name, found in a cigar box.
Over objections, the trial judge admitted the challenged evidence and refused to relitigate the issue of search and seizure. There was no reason for defense counsel to have been surprised; the pertinent files of the prosecutor's office were available to him and there were reasonable grounds to believe that the evidence might be used against his client in the penal proceedings that were pending. R.R. 3:2A-6(a). In the circumstances defendant should be deemed to have waived any objection to its admission during the trial. Ibid; State v. Ferraro, 81 N.J. Super. 213, 219 (Cty. Ct. 1963); State v. Murphy, 85 N.J. Super. 391, 396 (App. Div. 1964), affirmed o.b. 45 N.J. 36 (1965). See also State v. Fair, 45 N.J. 77, 86 (1965). The trial court properly ruled on the proffered evidence. State v. Fioravanti, 78 N.J. Super. 253, 255 (App. Div. 1963); State v. Bell, 89 N.J. Super. 437, 440 (App. Div. 1965).
We are satisfied that defendant's constitutional rights were not violated.
The judgment of conviction on the 1964 indictment is affirmed. Judgment of conviction on the 1962 indictment is reversed.