130 N.J. Super. 540 (1974)
328 A.2d 10
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD J. McCARTHY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 19, 1974.
Decided October 23, 1974.
*541 Before Judges KOLOVSKY, LYNCH and ALLCORN.
Mr. Stanley C. Van Ness, Public Defender, attorney for the appellant (Mr. Elliott M. Baumgart, of counsel and on the brief).
Mr. William F. Hyland, Attorney General, attorney for the respondent (Mr. Julian Wilsey, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by ALLCORN, J.A.D.
Defendant appeals his conviction of the offense of illegal possession of narcotics (phenobarbital), entered upon a jury verdict.
The single ground urged for reversal is that the trial judge erred "in admitting into evidence the fruits of an illegal, warrantless search" of the trunk of defendant's automobile. *542 The argument ignores the significant circumstances that, initially, the police conducted a search of the interior of the passenger compartment of the vehicle which, on the basis of substantial credible evidence, the trial judge found to have been made with the express consent of defendant (not here controverted by defendant), and that search revealed phenobarbital in the glove compartment. Hence, even assuming the search of the automobile trunk to have been illegal and to have disclosed, in the words of counsel for defendant, "possession of an additional quantity of the phenobarbital found earlier in the glove compartment," no prejudice resulted to defendant by the admission of the additional phenobarbital.
At all events, under the circumstances here present the warrantless search of the trunk of the automobile was entirely valid; there was no violation of the Fourth and Fourteenth Amendment rights of defendant. According to the evidence adduced on the motion to suppress, after defendant and Mrs. Burdge arrived at the Trott Inn, defendant opened the trunk of his automobile, removed from it a clear plastic bag containing green vegetable matter which he exhibited to Mrs. Burdge, at the same time informing her that it was "grass"; when she told him she did not want any "he put it back and locked his trunk and * * * his car, and we went in the Trott Inn." Mrs. Burdge thereupon telephoned the police, who dispatched two officers to Trott Inn.
Upon arrival of the officers at Trott Inn one of them interviewed Mrs. Burdge and she related to him the fact that defendant had exhibited and "had offered her grass," and that it was "in the trunk of the car". The officer then questioned defendant. Despite his denial of the "grass" incident related by Mrs. Burdge, defendant agreed to allow the officers to look inside the vehicle, gave them the key to the passenger compartment, and accompanied the officers and Mrs. Burdge to the parking lot. A search of the passenger compartment revealed in the glove compartment zig-zag papers (used commonly *543 for rolling marihuana cigarettes) and three ampuls of a clear liquid ultimately determined to be phenobarbital. When asked what the ampuls were for, the defendant gave no answer.
After completing their search of the passenger compartment the officers attempted but were unable to open the trunk with the key originally given them by defendant. Although the officers requested defendant to give them the key to the trunk, he did not supply it. (It was subsequently found concealed in one of the socks being worn by defendant.) The officers then escorted defendant and Mrs. Burdge to headquarters; defendant's automobile (which bore Vermont registration plates) was locked by the officers and left standing in the Trott Inn parking lot, in the care of an off-duty officer who had been asked to "stand by the vehicle."
At police headquarters the officers' renewed request of defendant to supply the trunk key still was unproductive. They thereupon obtained elsewhere a key that would open the trunk and returned to the Trott Inn parking lot, without defendant. There the trunk was opened, and a search revealed a clear plastic bag containing vegetable matter later found to be marihuana, five ampules of phenobarbital, a hypodermic syringe and two hypodermic needles.
From the foregoing it is plain that at the time the initial search of the automobile was made, the police officers had probable cause to believe that a violation of the Controlled Dangerous Substances Act (N.J.S.A. 24:21-1 et seq.) was being or had been committed by defendant, and that the automobile trunk contained articles that the officers were entitled to seize. Those same circumstances also justified the making of a search of the entire vehicle, including the trunk, without a warrant and without the consent of defendant. In short, at the time of initial search there were plentiful facts associating the automobile with a violation of the Controlled Dangerous Substances Act which, coupled with the mobility of the automobile, would have made a warrantless search proper then and there. Chambers v. Maroney, 399 U.S. 42, *544 90 S.Ct. 1975, 26 L.Ed.2d 419 (1969), reh. den. 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970).
Given the propriety of a warrantless search of the entire automobile initially, the lapse of time between the moment when the police locked the automobile and left it in the keeping of the off-duty officer at the Trott Inn parking lot and their return with a key for the trunk in no way detracted from the right and authority of the police to conduct the warrantless search of the automobile and its trunk upon their return. This, notwithstanding the fact that the search was not incident to the arrest of the defendant and without regard to the fact that the police could have further retained custody of the automobile pending application for and issuance of a search warrant. Chambers, supra. See Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); State v. LaPorte, 62 N.J. 312 (1973).
As the court stated in Chambers in upholding the validity of a warrantless search of an automobile sometime after it had been stopped and taken to police headquarters, which search was not incident to arrest:
Neither [Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)] nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in Carroll and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.
In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, supra, holds a search warrant *545 unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.
Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
On the facts before us, the [automobile] could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. * * * [399 U.S. at 50-52, 90 S.Ct. at 1980; emphasis supplied] [italics added]
In challenging the search of the trunk, defendant places considerable reliance upon the decision of this court in State v. Naturile, 83 N.J. Super. 563 (App. Div. 1964). To the extent that it expresses a view contrary to that set forth in Chambers v. Maroney, supra, the Naturile decision no longer is acceptable or viable.
Affirmed.