83 N.J. Super. 40 (1964)
198 A.2d 811
THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ANTHONY TANZOLA, NICHOLAS FERRONI, SALVATORE ZULLO, AND JACOB ROSENFELD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 25, 1963.
Decided March 19, 1964.
*41 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Donald R. Conway argued the cause for the defendants (Mr. Benedict E. Lucchi, attorney).
Mr. Robert Dilts, Assistant Prosecutor, argued the cause for the plaintiff (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
The State appeals from an order suppressing evidence seized by virtue of a search warrant. *42 The trial judge held that the affidavit upon which the search warrant had been issued, by another judge, was insufficient to establish probable cause and that the search warrant should not have been issued.
The affidavit was by a sergeant in the "Department of Police, Bergen County." He swore that he believed the premises in question were being used for the operation of a lottery, and that his belief was based on the following facts:
"The above-mentioned dwelling house is owned and occupied by Thomas Principe, who has a record of 5 prior criminal convictions and 2 other arrests. He is known to the Jersey City Police as a `strong-arm' man for a criminal syndicate operation. Within the last two months, members of the Bergen County Police Department have kept the premises under observation and have observed three men, casually dressed, entering the cellar of the premises at about 5:00 P.M. daily except Sundays. These men arrive in a 1962 Plymouth sedan, registration No. FWS 122, N.J., and remain in premises until 10:30 P.M. to 11:00 P.M. Immediately after their arrival, the cellar blinds and windows are closed. The men enter and leave the premises without any relation to whether the Principes are at home or not. On one occasion after their arrival at the Principe home, they unloaded from the Plymouth and carried into the cellar, two steamer trunks, a desk lamp, two folding aluminum tables, and small packages. They have been observed on other occasions to enter the premises with what appeared to be laundry shirt bags.
I contacted the Motor Vehicle Department and found that motor vehicle plates No. FWS 122, N.J. are registered in the name of Anthony M. Tanzola, 429 South 18th St., Newark, New Jersey. Tanzola's driver's license No. T0507-05374-10062, lists United Roofing Co. of Colbern St., Newark, N.J. as his place of employment. A check with the Police Department of the City of Newark revealed that there is no firm or street of that name in the City of Newark. Tanzola's driver's license description matches the description of one of the three men who have been observed to enter and leave the premises in the manner described above. Tanzola uses the alias of Michael Delmore and has a prior criminal record of 5 convictions and one other arrest on a gambling charge.
On July 10, 1962, I kept the above premises under observation commencing at about 4:30 P.M. At 5:32 P.M. two men arrived and entered the premises by means of the cellar. They used a key to enter. Suspect No. 1 is in his 20's, approx. 5' 9", 165-170 lbs., short black hair; Suspect No. 2 was about 45-50 years of age, approx. 200 lbs., grey hair, receding hair line. They arrived on foot. Immediately after they arrived, a third man arrived. Suspect No. 3 was approx. 45-50 years of age, 5' 7", black-greying hair, wore glasses, *43 and weighing approx. 150-160 lbs. As soon as they entered the cellar, the blinds and windows were closed. At 6:25 P.M., the 1962 Plymouth N.J. Reg. No. FWS 122, pulled into the driveway adjacent to the house and a man fitting Tanzola's description got out of the driver's side. He walked around to the passenger side and opened the front door. He removed a brownish-color bag, approximately 8 x 12", which appeared to be quite full and bulging. He then entered the house by the cellar door with the bag.

* * * * * * * *
Subject No. 1 has been observed to enter the premises in the manner described above for the past two weeks.
Investigation has disclosed that Principe has made expensive alterations to the premises and that he and members of his family drive late model automobiles, although he has no known employment."
We think this affidavit set forth enough to justify the issuance of the search warrant, and that the court erred in suppressing the evidence.
To begin with, it must be remembered that when one judge passes upon the issuance of a search warrant by another judge the judgment of the issuing judge is conclusive, unless there was clearly no justification for the issuing judge's conclusion that the affidavit showed probable cause. Merritt v. United States, 249 F.2d 19, 20 (6 Cir. 1957). In State v. Zuzulock, 39 N.J. 276, 281 (1963), the Supreme Court quoted the following with approval from United States v. Ramirez, 279 F.2d 712 (2 Cir.), certiorari denied 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960):
"* * * In close cases such as the present one the very fact that the Commissioner found probable cause is itself a substantial factor tending to uphold the validity of the warrant he issued. See Jones v. United States, 1960, 362 U.S. 257, 267, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697; Brandon v. United States, D.C. Cir.1959, (106 U.S. App. D.C. 118), 270 F.2d 311, 316; Batten v. United States, 5 Cir. 1951, 188 F.2d 75, 77; Gracie v. United States, 1 Cir., 1926, 15 F.2d 644, 646, certiorari denied 273 U.S. 748, 47 S.Ct. 449, 71 L.Ed. 872. * * *"
In United States v. Bell, 126 F. Supp. 612, 614-615 (D.C.D.C. 1955), affirmed as to all but one defendant in 99 U.S. App. D.C. 351, 240 F.2d 37 (1956), certiorari denied 353 *44 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760 (1957), the court said:
"It is an unreasonable search and seizure that is condemned by the Fourth Amendment.

* * * * * * * *
This is not a case where overzealous officers have taken matters into their own hands and in the unrestrained exercise of their discretion have invaded the privacy of a residence, rather than pursuing orderly established procedures under the `aegis of judicial impartiality' where full opportunity was present. Cf. United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 95, 96 L.Ed. 59; McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Johnson v. United States, supra [333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436]. Here the officers did not act recklessly upon mere information, but cautiously established a watch over the activities of the suspect and those who came into contact with him to determine whether a pattern of behavior was disclosed conforming to the customary procedures required in the operation of a numbers lottery. Cf. Mills v. United States, 1952, 90 U.S. App. D.C. 365, 196 F.2d 600, certiorari denied 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643. Their observations and conclusions were submitted in detail under oath for scrutiny by the United States Commissioner, authorized to issue warrants of arrest and search. This in itself is a factor to be considered in testing whether the search was reasonable. See United States v. Rabinowitz [339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950)]." (Emphasis ours)
In evaluating an affidavit, the judge to whom application for a search warrant is made may take into consideration the qualifications, experience and training of the affiant. "Probable cause is not a philosophical concept existing in a vacuum; it is a practical and factual matter. A fact which spells reasonable cause to a doctor may make no impression on a carpenter, and vice versa * * *. The question is what constituted probable cause in the eyes of a reasonable, cautious and prudent peace officer * * *." Bell v. United States, 102 U.S. App. D.C. 383, 254 F.2d 82 (1958), certiorari denied 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). Although the Bell case dealt with an arrest and search without a warrant, the quoted language is applicable here. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, 450 (1963). And the magistrate *45 should take into consideration "what is commonly known to be the usual procedures and operations of offenders in perpetrating the type of crime alleged." United States v. Bell, supra, 126 F. Supp., at pp. 614-615. At page 616 the court gave the following examples of indicia of criminal activities which a police officer would recognize but a layman might not:
"The officers observed that the persons entering or leaving both premises had bulging pockets, or carried paper bags, a large pocket-book, a cardboard box, or the like. On one occasion, a known or suspected numbers operator was observed removing a paper bag from his coat, after he had been walking with hand in coatpocket as if concealing something, just before entering 1628 O Street, N.W. Knowing from experience that numbers collections tend to be bulky, the officers had the right to infer they would be concealed in paper bags, bulging pockets and other parcels and containers. Cf. Mills v. United States, supra, (large paper bag); United States v. Bianco, 3 Cir., 1951, 189 F.2d 716 (large suitcase extraordinary for short trip made); United States v. Johnson, D.C.D.C., 1953, 113 F. Supp. 359 (pocket bulging). See Brinegar v. United States, supra, 338 U.S., at page 163, 69 S.Ct., at page 1304, 93 L.Ed., at page 1884 (automobile believed to be engaged in illicit liquor running observed to be "heavily loaded" and "weighted with something"); Stobbie v. United States, 7 Cir., 1937, 91 F.2d 69, 70 ("one-ounce colored envelopes of the character in which heroin is usually packed").
The officers, having probable cause to believe both premises were secret hideouts for illegal activities, were justified in inferring that those who entered at the significant time of day were probably participants in the operation of the numbers game. Wyche v. United States, supra [90 U.S. App. D.C. 67, 193 F.2d 703]; Beard v. United States, 1935, 65 App. D.C. 231, 238, 82 F.2d 837, 844, certiorari denied 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382; Cantrell v. United States, 5 Cir., 1926, 15 F.2d 953, 954, certiorari denied 273 U.S. 768, 47 S.Ct. 572, 71 L.Ed. 882. The police had a right to believe that George Bell, a suspected numbers operator, was a `pick-up man' by his presence with paper bag at 2126 10th Street, N.W., and because he had been seen going from these premises to his home at 1304 Gallaudet Street, N.E., with paper bag, and a known numbers operator, one Larkin King, had been seen entering and leaving his residence, that in his home there was numbers paraphernalia."
The paper sack and the bulging pocket have often been called "hallmarks of lottery." Townsend v. United States, 253 F.2d 461 (5 Cir. 1958); United States v. Carroll, 98 U.S. App. D.C. 244, 234 F.2d 679 (D.C. Cir. 1956), reversed *46 on other grounds Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957); Carter v. United States, 231 F.2d 232, 234 (5 Cir. 1956), certiorari denied 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498 (1956); United States v. Long, 169 F. Supp. 730 (D.C.D.C. 1959).
In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, 1890-1891 (1949), the Supreme Court said:
"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.
"The substance of all the definitions' of probable cause `is a reasonable ground for belief of guilt.' * * * Probable cause exists where `the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543. * * *
These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whims or caprice." (Brackets contained in quoted matter)
Probable cause often arises out of "the total atmosphere of the case" (United States v. Bell, supra, 126 F. Supp., at p. 615), and the affiant's personal knowledge, or information received from other law enforcement officers or reliable informers, of the suspect's occupation, reputation, associates and prior record may help make up a "total atmosphere" of probable cause. Traynor, "Mapp v. Ohio [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081] at large in the *47 50 States" [1962] Duke L.J. 319, 347; United States v. McCormick, 309 F.2d 367 (7 Cir. 1962), certiorari denied 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963); United States v. Juvelis, 194 F. Supp. 745 (D.C.N.J. 1961); Townsend v. United States, supra; People v. Ward, 226 Mich. 45, 196 N.W. 971 (Sup. Ct. 1924). Cf. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 1726 (1963).
Defendants argue that the affidavit was insufficient because it did not exclude the possibility that a legitimate enterprise was being carried on in the premises. It did not have to. The applicant for a search warrant does not have to prove guilt or even probable guilt. He need only show probable cause to believe that there is criminal activity on the premises.
Assaying the affidavit in the light of the foregoing principles, we think it provided an ample basis for the issuing judge's finding of probable cause. In any event we think it can not be said that there was no justification for his conclusion that there was probable cause. It was therefore error to suppress the evidence.
Reversed.