96 N.J. Super. 173 (1967)
232 A.2d 687
THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOSEPH KASABUCKI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1967.
Decided July 14, 1967.
*176 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Raymond S. Londa, Assistant Prosecutor, argued the cause for appellant (Mr. Leo Kaplowitz, County Prosecutor, attorney).
Mr. John T. Glennon argued the cause for respondent (Messrs. Weiner, Weiner & Glennon, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by the State, pursuant to leave granted, from an order of Judge Fulop, sitting in the Union County Court, suppressing evidence seized by the police in defendant's home under a search warrant. The warrant had been issued by another County Court judge based on the affidavit of Detective Robert Ward of the county prosecutor's staff.
The search warrant was issued on May 24, 1966. On the following day police officers, acting under authority of the warrant, entered defendant's home at 614 Jefferson Avenue, Elizabeth, New Jersey. They seized $3,800 discovered in a *177 vanity in the master bedroom, $277 found on defendant's person, three sheets of paper with horserace bets written thereon, and other personal property.
Defendant was arrested and subsequently indicted for bookmaking in violation of N.J.S. 2A:112-3. Thereafter he moved to suppress the evidence obtained by the police on the ground that the search warrant was legally insufficient, not being based on "probable cause." His motion was granted and the State appealed.
Detective Ward's affidavit, which was the sole basis for issuance of the search warrant, stated as follows: On May 20, 1966 he was assigned to investigate a report that defendant's telephone was being used for the purpose of bookmaking. His superior officer gave him a letter dated May 16 sent to the Elizabeth chief of police by John F. Walsh, a deputy police commissioner of New York City. The letter stated:
"Confidential information has been obtained by this department that telephone area Code 201 351-2904 is being used for illegal gambling purposes (bookmaking  horses). This phone is listed to: Joseph Kasabucki, 614 Jefferson Avenue, Elizabeth, New Jersey."
Ward had County Investigator Pisane contact the telephone company, which confirmed that two telephones bearing the same number were listed in Kasabucki's name in his one-family residence.
On the same day, at about 1:50 P.M. Ward called telephone number 351-2904 and a male voice answered. Ward said the following conversation took place:
"WARD: Hey Case. This is Bob. I want a two-four reverse in the fifth and sixth at Acqueduct.
VOICE: Bob who?
WARD: Bob Wilson.
VOICE: I don't know no Bob Wilson. Who told you to call me?
WARD: Willie, Little Willie.
VOICE: Where do you know him from?
WARD: From the place. You know, the saloon.
VOICE: What place?
WARD: Garby's.
VOICE: Well, put him on then.
*178 WARD: I'm not there now.
VOICE: How come he told you to call me?
WARD: I saw him at lunch. I told him I had a good one.
VOICE: What did you say your name was again?
WARD: Bob Wilson. Do you want to take this?
VOICE: No. I don't know you.
WARD: Well, I got to call a guy in Newark then. I wanted to get connected locally. You don't want it then?
VOICE: No. I don't know you."
Ward said that based on his experience in gambling law enforcement the conversation indicated to him that the person who answered the telephone was a bookmaker, who did not accept the bet because Ward was unknown to him or was unable to offer the proper credentials, i.e., code-name or password. Ward further stated he believed that probable cause existed for the issuance of a search warrant to search defendant's home and any persons found therein, that a search would reveal betting slips and other gambling paraphernalia, and that the bookmaking statute was being violated.
In granting defendant's motion to suppress, Judge Fulop pointed out that the affidavit made no reference to the reliability of the undisclosed source of the information provided by the New York police. He said it showed no surveillance, no other investigation, and no checking of the "confidential source" by local authorities following receipt of such information. Referring to the affiant's opinion that the telephone conversation with an unidentified person indicated bookmaking was being carried on in defendant's home, Judge Fulop concluded that it was "no more than wishful thinking." He said:
"Anyone called on the telephone with such a proposition who had never taken a bet might well say the same things this voice said. He might well be mystified by such a call and seek to get the caller identified.
But assuming that the `Voice' knew about placing bets, the question is not whether he was a professional bookmaker, but whether he was at that time in that place taking bets. The refusal to take the bet, the assertion `I don't know you' is no basis for a `well-grounded *179 suspicion' that the unknown speaker, even less the defendant, did take bets."
Judge Fulop held that the finding of probable cause by the judge who issued the warrant was not based on facts or circumstances presented under oath and ordered that the evidence be suppressed.
The State alleges the court's ruling was erroneous. It contends the information received by letter from the New York police should be considered in determining whether there was probable cause to believe defendant's telephone was being used for bookmaking  even though the letter and Ward's affidavit contained no representation that the information was obtained from a reliable source. It argues that the telephone conversation, standing alone, was sufficient to establish probable cause, and that Ward's conclusion that bookmaking was being carried on must be considered in the light of the detective's experience in gambling cases. It further argues that when one judge passes upon the issuance of a search warrant by another judge, the judgment of the issuing judge is conclusive  unless there was clearly no justification for the issuing judge's conclusion that the affidavit showed probable cause.
The guidelines for issuance of a search warrant are laid down in State v. Macri, 39 N.J. 250 (1963), where the court said:
"Under its terms the search warrant is not to issue except upon probable cause, supported by oath or affirmation. The crucial determination is to be made not by the police officer but by a neutral issuing judge. Before the judge is in a position to make his determination for issuance, he must properly be made aware of the underlying facts or circumstances which would warrant a prudent man in believing that the law was being violated. See Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 548, 69 L.Ed. 1032, 1036 (1925). Legal proof sufficient to establish guilt is, of course, not required; but suspicion and good faith on the officer's part, without more, will not suffice. See Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 138 (1959) As the Supreme Court succinctly put it in Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159, 162 (1933), a *180 search warrant may not issue unless the issuing magistrate can find probable cause from the facts or circumstances presented to him under oath or affirmation  `Mere affirmance of belief or suspicion is not enough.' [citations omitted]" (at pp. 256-257)
In the instant case Ward's affidavit did not satisfy the tests set forth in Macri. First, the letter from the New York police department was hearsay based upon hearsay. It referred to "confidential information" obtained by the department without stating the source of such information or any representation that the informant was reliable. Although an affidavit will not be held invalid solely because the reasons to believe illegal activity is being carried on are based upon mere hearsay, see Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 708 (1960), it must satisfy the requirement that the information was supplied by a reliable informer. State v. Ratushny, 82 N.J. Super. 499, 503-504 (App. Div. 1964), and see Annotation, 10 A.L.R.3d 361, 370 (1966). Failure to do so eliminates any probative value which might otherwise be given to such information. Secondly, the letter stated a mere conclusion that defendant's telephone was being used for an illegal purpose. It failed to reveal any facts upon which a judge could decide that probable cause existed. See Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503, 1509 (1958), and State v. Moriarly, 39 N.J. 502, 503 (1963).
We look next to the telephone conversation between Detective Ward and an unidentified person. The State relies heavily on Smith v. State, 191 Md. 329, 62 A.2d 287, 5 A.L.R.2d 386 (Ct. App. 1948), where a police officer had a telephone conversation with a suspected bookmaker. The case is inapposite. In Smith the accused accepted the telephone bet and there was evidence that his premises had been under a continuous and revealing surveillance for several days before the telephone call was made. Here, the affidavit set forth no facts showing independent personal knowledge or suspicion by the local police authorities that defendant was engaged in bookmaking. *181 The premises were never placed under surveillance. The voice at the other end of the telephone did not accept the bet and was never identified as being the defendant's.
The telephone conversation itself reveals little. One possible inference is that the person who answered the telephone was mystified by the call and was seeking identification of the caller. However, even though his response may support an inference that the speaker was a bookmaker, it cannot support the further inference that bookmaking was then taking place at that place. Such further inference is absolutely essential to a finding of probable cause for issuance of a search warrant because the issuing judge must be convinced that the fruits and means of the crime would probably be found in defendant's home.
The State contends that while it may be argued that the telephone conversation by itself was insufficient to establish probable cause, the question for determination is what constituted probable cause in the eyes of a reasonable, cautious police officer citing State v. Tanzola, 83 N.J. Super. 40, 44 (App. Div. 1964). However, Detective Ward's conclusion that the telephone conversation indicated that the person with whom he talked was a bookmaker was not enough to justify issuance of a warrant. If that were so the issuing judge would be granting a warrant on the officer's conclusion alone, and then the officer's suspicions rather than the judge's determination would be the controlling factor. As stated in State v. Burrachio, 39 N.J. 272 (1963), that would defeat the very purpose of the constitutional guarantee which was designed to make certain that search warrants would not issue except upon determinations made by neutral judges and based on verified showings of probable cause (at p. 276). Suspicion and good faith on the part of Detective Ward are not, without more, probable cause for the issuance of a search warrant. Ibid, and see State v. Macri, supra, 39 N.J., at p. 256.
We agree with the State's contention that when one judge passes upon the issuance of a search warrant by another judge, the judgment of the issuing judge is conclusive, unless *182 there was clearly no justification for the issuing judge's conclusion that the affidavit upon which the warrant was based showed probable cause. State v. Tanzola, supra, 83 N.J. Super., at p. 43. However, in the instant case, as Judge Fulop concluded, it is obvious that the finding of probable cause upon which the search warrant issued was based on hearsay statements with no substantial basis for crediting the hearsay and conclusory statements without adequate supporting facts. There was no justification for the issuing judge's finding that the affidavit upon which the warrant was based established probable cause.
The order suppressing evidence is affirmed.