**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4478-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LEE AVILES, JR., a/k/a
JOSE CORTIJO,

    Defendant-Appellant.

_____

        Argued June 5, 2018 — Decided July 9, 2018

        Before Judges Reisner and Mitterhoff.

        On appeal from Superior Court of New Jersey,
        Law Division, Bergen County, Indictment No.
        13-12-1603.

        Alan L. Zegas argued the cause for appellant
        (Law Offices of Alan L. Zegas, attorneys; Alan
        L. Zegas and Joshua M. Nahum, on the briefs).

        William P. Miller, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for respondent (Dennis Calo, Acting
        Bergen County Prosecutor, attorney; Annmarie
        Cozzi, Special Deputy Attorney General/Acting
        Assistant Prosecutor, of counsel and on the
        brief; John J. Scaliti, Legal Assistant, on
        the brief).

PER CURIAM

Defendant Lee Aviles, Jr. appeals from his conviction, based on his guilty plea to firearm possession while committing a controlled dangerous substance (CDS) offense, N.J.S.A. 2C:39-4.1(a). His appeal focuses on the trial court's June 16, 2016 denial of his motion to suppress. We affirm.

This matter arises from a narcotics investigation that led to defendant's indictment. The Bergen County Prosecutor's Office initiated an investigation of Matthew Martin, Danny Saleh and their associates in January 2012. With the assistance of a confidential informant (CI), the police obtained evidence that Martin and Saleh were involved in a major drug trafficking operation that imported large amounts of marijuana and cocaine from California. Based on information obtained through the CI, the police obtained a number of court orders authorizing multiple wiretaps. These wiretaps were incorporated by reference in Detective Massaro's April 13, 2012 affidavit in support of the application for a search warrant.

Massaro's affidavit stated that the police investigation revealed that Martin and Saleh utilized middlemen who received narcotics on consignment and that they had partnered with several individuals including defendant. The affidavit also set forth communications evidencing Martin collecting money from these

subordinates.  Several of these calls took place between Martin and defendant.

In a March 18, 2012 call from Martin to defendant, defendant tells Martin that he is definitely going to see him today and if Martin "needs it" to come by his crib and that he is only ten minutes away.  In a March 21, 2012 call from defendant to Martin, defendant asks Martin if he forgot about him because Martin was supposed to stop by the job.  Defendant says he is ready to do it and Martin agrees to meet up with him.  On April 2, 2012, Martin sends defendant a text stating, "If u cud drop that change for me. I cud use it."  Defendant texts back "I'll pass by later.  When u get back?"  On April 9, 2012, Martin called defendant.  Defendant asks if Martin is home because he wanted to drop something off, to which Martin replies to leave it in an envelope with the doorman. Subsequently, surveillance showed that at approximately 1:30 p.m. defendant parked his black Infiniti and entered the lobby at the St. Moritz where Martin had an apartment.  At about the same time, Martin received a call from the doorman stating that "Lee" was there to drop something off for him.  Massaro, an expert in narcotic trafficking, concluded that the above communications were coded, and were typical of those between a drug dealer and his customer.

When the search warrant was executed, detectives found over $15,000 in cash, nine different cell phones, marijuana, a digital scale and two stolen handguns. Defendant was charged with (1) one count of the third-degree offense of manufacturing, distributing, or dispensing a CDS, N.J.S.A. 2C:35-5(b)(11); (2) two counts of the second-degree offense of possessing a firearm during the commission of a CDS offense, N.J.S.A. 2C:3-4.1(a); (3) one count of the fourth-degree offense of possessing body armor penetrating bullets, N.J.S.A. 2C:39-3(f); (4) one count of the third-degree offense of money laundering, N.J.S.A. 2C:21-2; and (5) two counts of the second-degree offense of wrongful possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7(b).

On June 6, 2016, the trial judge denied defendant's motion to suppress physical evidence that the police had seized from his home pursuant to the search warrant. The judge noted State v. Kasabucki, 52 N.J. 110, 115 (1968), required him to accord substantial deference to the probable cause determination of a judge of equal jurisdiction. Regardless, the judge found that based on the evidence of the phone calls between Martin and defendant, the delivery of the envelope to Martin, the surveillance of defendant, and Detective Massaro's experience in coded conversations typical of drug dealers and their clients, there was sufficient evidence in the affidavit to sustain probable cause.

On November 28, 2016, defendant pled guilty to one count of second-degree possessing a firearm during the commission of a CDS offense, N.J.S.A. 2C:39-4.1(a), with the condition that he had the right to appeal the denial of the suppression motion. Defendant was sentenced to five years in prison with three years of parole ineligibility. This appeal ensued.

On appeal, defendant makes the following arguments:

> POINT 1: NEW INFORMATION CREATES REASON TO BELIEVE THAT THERE IS INCORRECT INFORMATION IN THE WARRANT AFFIDAVIT REQUIRING THAT THIS MATTER BE REMANDED TO THE TRIAL COURT FOR AN EVIDENTIARY HEARING AND REDETERMINATION. (Not raised below).[1]

> POINT 2: THE EVIDENCE RECOVERED PURSUANT TO THE WARRANT SHOULD BE SUPPRESSED BECAUSE THE WARRANT WAS ISSUED WITHOUT SUFFICIENT PROBABLE CAUSE.

> POINT 3: THE LOWER COURT ERRED BY APPLYING AN IMPROPER INTERPRETATION OF THE LEGAL STANDARD OF THE DEGREE OF DEFERENCE TO BE GIVEN TO THE WARRANT DETERMINATIONS OF A COURT OF THE SAME LEVEL.

Defendant argues the search warrant application lacked sufficient probable cause as to defendant. Specifically, defendant argues that the affidavit sworn by Detective Massaro was "extremely detailed" with respect to other subjects of the warrant

---

[1] Defendant did not make a motion to supplement the record and the new information is not part of the appellate record. Therefore, we will not address defendant's argument in Point I.

application, providing the probable cause necessary to justify issuance and execution of a search warrant with respect to them, However, defendant argues that as to him, the warrant was devoid of adequate probable cause to believe that (1) defendant was generally involved in criminal activity of any kind or that, (2) drugs or other contraband would be found at defendant's residence. Specifically, defendant notes that the police observed "[n]o controlled buys, no hand-in-hand transactions, no transportation of bags - nothing . . . unlawful" implicating defendant. Defendant also asserts that the trial judge, in reviewing the sufficiency of the affidavit, employed an erroneous standard.

We accord substantial deference to a magistrate's decision that probable cause exists for the issuance of a warrant. State v. Chippero, 201 N.J. 14, 33 (2009) (quoting State v. Terry, 59 N.J. 383, 393 (1971). We must sustain the magistrate's decision if sufficient evidence is contained in the affidavit to sustain a finding of probable cause. Id. at 32. Any "[d]oubt as to the validity of a warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 555 (2005) (quoting Kasabucki, 52 N.J. at 115). Although "reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, . . . the preference for warrants is most appropriately effectuated by

according 'great deference,' to a magistrate's determination.'"

Spinelli v. United States, 393 U.S. 410, 419 (1969).

Probable cause is a "'flexible, nontechnical concept'" that

> includes a conscious balancing of the governmental need for enforcement of the criminal law against the citizens' constitutionally protected right of privacy. It must be regarded as representing an effort to accommodate these often competing interests so as to serve them both in a practical fashion without unduly hampering the one or unreasonably impairing the significant content of the other.
>
> [State v. Sullivan, 169 N.J. 209, 211 (quoting Kasabucki, 52 N.J. at 116).]

In making a probable cause determination, the issuing judge is called upon to consider the totality of the circumstances and make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability the contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (2003). See State v. Novembrino, 105 N.J. 95, 122-23 (1987) (adopting the totality of the circumstances test set forth in Illinois v. Gates).

In this case, considering the totality of the circumstances, the trial court did not err in finding there was sufficient evidence to support the issuing judge's finding of probable cause.

Specifically, as the trial judge found, the evidence of the phone calls between Martin and defendant, the delivery of the envelope to Martin, the surveillance of defendant, and Detective Massaro's experience in coded conversations typical of drug dealers and their clients, provided a sound basis for finding probable cause to issue the search warrant.

Defendant's argument that the trial judge accorded the issuing judge's probable cause determination undue deference has no merit. First, the trial judge applied the correct standard of review. See State v. Kasabucki, 52 N.J. at 177 (holding "another trial court judge of equal jurisdiction should consider as binding the decision of his brother that probable cause has been sufficiently shown to support a warrant, unless there was clearly no justification for it.") (citing State v. Tanzola, 83 N.J. Super. 40, 43 (App. Div. 1964)). The judge also independently determined that the totality of the circumstances supported probable cause to issue the warrant. Accordingly, the trial court did not err in denying defendant's motion to suppress the physical evidence obtained after the search warrant was executed. We affirm the trial judge's denial of the motion to suppress.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4478-16T3